IN RE TYSON.

1. HABEAS CORPUS.
The regularity of proceedings upon which a defendant has been con-
        victed of a capital offense will not be reviewed upon *habeas corpus.*
        The remedy is by writ of error.
2. PRACTICE IN CRIMINAL CASES—SUPERSEDEAS.
A defendant under sentence for a capital offense is given a remedy by
        writ of error, with an absolute right to a *supersedeas* to stay exe-
        cution of the sentence pending a hearing and determination

*Petition for Writ of Habeas Corpus.*

Mr. N. Q. TANQUARY, for petitioner.

THE ATTORNEY GENERAL, opposing.

CHIEF JUSTICE HAYT delivered the opinion of the court.

At the April term, 1889, of the district court of Arapahoe
county, petitioner, Henry Tyson, was convicted of murder
of the first degree, and sentenced accordingly. In compli-
ance with the terms of that sentence, he was conveyed to the
Colorado state penitentiary for execution, but before the
week of execution had arrived he was granted a reprieve for
sixty days by the governor, to the end that the condition of
his mind might be inquired into.

In the month of October, 1889, he was brought before the
court and a jury impaneled for the purpose of inquiring into
his mental condition. At the first trial the jury disagreed,
but at a subsequent trial the petitioner was adjudged to be
insane. From said last mentioned date, and until the 9th day
of March, 1895, he has been confined either in the state pen-
itentiary or in the state insane asylum, as an insane prisoner
under conviction, but on the latter date he was again brought
before the district court of Arapahoe county in order that
his then mental condition might be inquired of. This last

inquisition resulted in his being adjudged sane, upon the 15th day of March, 1895, at which time a sentence of death was pronounced, to be executed during the week commencing April 8, 1895.

Petitioner, at the time of making this application, was confined in the common jail of Arapahoe county, in the custody of the sheriff, awaiting transportation to the state penitentiary at Canon City, the place designated as the place of execution of the death penalty.

The crime for which the accused is under sentence was committed before the passage of the act of April 19, 1889, which act made some changes as to the time, place and other incidents pertaining to the infliction of the death penalty, and the claim is that as the act in force at the time of the commission of the crime has been repealed, the act of April 19, 1889, is *ex post facto* as to petitioner, and that for this reason he is entitled to his liberty.

This is the second application that has been made in this case for the discharge of the prisoner under the *habeas corpus* act. The first application was made at the September term, 1889. Upon that application the writ was granted and the petitioner brought before the court, but after a full hearing it was adjudged that the changes made by the act of 1889 were referable to prison discipline, and as such were within the power of the legislature to enact, and that the changes were not sufficient to render the act *ex post facto*. The prayer of the petition was for this reason denied and the prisoner remanded. *In re Tyson*, 13 Colo. 482. After that decision was announced, the statute under consideration was passed upon by the supreme court of the United States in two cases in which *Medley* and *Savage* were respectively petitioners. 134 U. S. 160 and 176. In these cases it was held by the court, Justices Brewer and Bradley dissenting, that the law was *ex post facto* as to those offenses committed before the passage of the act, and the petitioners were accordingly discharged as the result of the *habeas corpus* proceedings.

The facts stated in the present petition are the same as

those presented in the former, with a history of the case since the former application was determined. The decision of the United States Supreme Court in the *Medley and Savage Cases* is relied upon for the purpose of procuring the discharge of the petitioner. We, of course, recognize as binding upon all courts, national and state, the decision in the *Medley and Savage Cases*, that decision having been based upon the provision of the United States constitution prohibiting *ex post facto* laws, and emanating from the court of last resort upon questions of this character.

It is claimed, however, that the doctrine announced in the *Medley and Savage Cases* has been modified as the result of several decisions rendered by the same tribunal since the announcement of the opinion in the *Medley and Savage Cases;* but while it is true that similar questions with reference to the statutes of other states have been passed upon by that court, and although in some of these cases some portions of the argument resorted to by the court in support of the conclusion reached in the *Medley and Savage Cases* have been to some extent modified, the decision, in so far as the *ex post facto* character of our statute is concerned, has not been departed from by the national tribunal, but, on the contrary, it has been expressly recognized in subsequent cases. *Holden v. Minnesota*, 137 U. S. 483; *McElvaine v. Brush*, 142 U. S. 155.

And in the recent case of *Kelly v. The People*, 17 Colo. 130, the *ex post facto* character of the statute, as the same was interpreted by the supreme court of the United States, was expressly recognized by this court. Kelly was convicted of murder of the second degree in the district court of El Paso county, and sentenced to imprisonment for twenty-six years, the judge presiding at the trial expressly instructing the jury that he could not be convicted of murder of the first degree by reason of the former decisions upon the statute. In commenting upon this action of the district judge, Mr. Justice Elliott, in delivering the opinion of the court, said:

" In view of these decisions of the highest judicial tribunal

of our country, the district court of El Paso county acted wisely in charging the jury not to convict Kelly of a crime so heinous that he would escape punishment altogether."

In the *Medley and Savage Cases* the prisoners were set at liberty without punishment of any kind or character, whereas if the cases had been heard upon writ of error under the United States statute, the supreme court might have corrected the errors committed by the trial court, or have reversed the judgment and remanded the cases for a new trial. The court's attention does not, however, seem to have been called to the strong reasons that existed for requiring the review to be upon error instead of by the summary proceeding upon a writ of *habeas corpus*. If the court's attention had been called to the form of proceeding and the advisability of requiring the prisoners to have made their application by writ of error, the subsequent decisions of the court, we think, leave no doubt that the writ of *habeas corpus* would have been denied, and the prisoner required to resort to his writ of error. This conclusion is, we think, fully authorized by the opinion of that court *In re Frederich, Petitioner*, 149 U. S. 70, in which it is said:

" It is certainly the better practice, in cases of this kind, to put the prisoner to his remedy by writ of error from this court, under section 709 of the Revised Statutes, than to award him a writ of *habeas corpus*. For, under proceedings by writ of error, the validity of the judgment against him can be called in question, and the federal court left in a position to correct the wrong, if any, done the petitioner, and at the same time leave the state authorities in a position to deal with him thereafter, within the limits of proper authority, instead of discharging him by *habeas corpus* proceedings, and thereby depriving the state of the opportunity of asserting further jurisdiction over his person in respect to the crime with which he is charged.

" In some instances, as in *Medley, Petitioner*, 134 U. S. 160, the proceeding by *habeas corpus* has been entertained, although a writ of error could be prosecuted; but the general rule and

better practice, in the absence of special facts and circumstances, is to require a prisoner who claims that the judgment of a state court violates his rights under the constitution or laws of the United States, to seek a review thereof by writ of error instead of resorting to the writ of *habeas corpus*." See, also, *In re Wood*, 140 U. S. 278.

The petitioner, Tyson, stands convicted of murder of the first degree. No error is claimed in the proceedings prior to judgment. We must therefore assume, for the purposes of this case, that his conviction was in all respects regular and proper. Should this court, therefore, or any other court having jurisdiction, entertain a proceeding by *habeas corpus*, and discharge the prisoner, he would stand in the anomalous position of having a verdict against him for murder of the first degree, upon which verdict no sentence could be imposed, and so long as the verdict stood he probably could not be tried for any of the lesser offenses included in the graver offense charged in the indictment. If, however, the prisoner is relegated to his remedy by writ of error, the judgment of the lower court may be reversed, and if the facts warrant it, he may be remanded for a new trial for some lower grade of homicide. We note the manifest reluctance with which the supreme court of the United States discharged Medley and Savage as the result of the *habeas corpus* proceedings. This is apparent from the qualified terms of the order requiring ten days' notice to the attorney general of Colorado before the final discharge. This notice could have been only for the purpose of giving the state an opportunity to proceed against the prisoners for some lower grade of homicide, although it was correctly assumed by the dissenting judges that the conclusion of the majority would result in giving the prisoners their full liberty.

If the decision in the *Kelly Case*, *supra*, is sound, we have no doubt of the duty of this court to refuse to entertain the present application by *habeas corpus*, and relegate the prisoner to his remedy by writ of error. This is in accordance with our statutes with reference to the writ of *habeas corpus* and

writs of error in capital cases.    Chap. 49, Gen. Laws of 1883 ;
Session Laws of 1893, p. 128.    In the former act certain re-
strictions are placed upon the issuance of a second writ of
*habeas corpus*, which, we think, prevent this court from dis-
charging the prisoner.    Moreover, the case seems to be fully
provided for by the act of 1893, entitled " An Act in Relation
to Writs of Error in Criminal Cases."    Section one of this
act reads :

" Any defendant under sentence for a capital offense ·may
have a writ of error to the supreme court upon filing in such
court, on or before the commencement of the week of execu-
tion, a transcript of the record in the court below, duly cer-
tified, with an assignment of errors.    In cases wherein a bill
of exceptions is necessary to a full understanding of the errors
assigned, such bill of exceptions shall also be filed with such
transcript.    Thereupon the clerk of the supreme court shall
issue a writ of error to the trial court and a *supersedeas* to
stay the execution of the sentence of death provided the
supreme court may, for cause shown, extend the time in
which any act herein required is to be performed."

By this act the petitioner is given a remedy by writ of
error, with an absolute right to have the judgment suspended,
pending a hearing and determination; but in so far as the
method of procedure is concerned, we are clearly of the opin-
ion that the petitioner has no right to have the former
decision of this court reviewed upon this application.

*Writ denied.*