## TERRITORY V. MILLER.

1. CRIMINAL LAW—MURDER—PLEA OF GUILTY—DEATH PENALTY—SECTION 249, PEN. CODE DAK., AND SECTION 1, ACT FEBRUARY 21, 1883.

Under Section 249 of the Penal Code of Dakota, as amended by Section 1, of the act of February 21, 1883, where an accused pleads guilty to the charge of murder as charged in the indictment, the court may sentence him to death.

2. SAME—PLEA OF GUILTY ADMITS TRUTH OF INDICTMENT.

By a plea of guilty a defendant confesses the indictment to be wholly true, and therefore that his guilt is that charged, and not a less degree.

Filed May 25, 1886.

Error to district court, Grand Forks county.

*C. B. Pratt*, for plaintiff in error.

*Geo. Rice, Att'y Gen.*, and *W. A. Selby, Dist. Att'y*, for the territory.

CHURCH, J. On the sixth day of August, 1885, the grand jury of Grand Forks county returned to the district court an indictment charging the plaintiff in error, George Miller, with the crime of murder, committed upon one Abbie Snell, January 24, 1885. Upon this indictment Miller was duly arraigned, and certain preliminary proceedings were had, in the course of

which it became apparent that his purpose was to plead guilty.
The court thereupon carefully warned and admonished him of
the solemn consequences of such a plea, and that it would be a
plea of guilty of murder, and would be so entered, and not, as
insisted by his counsel, a plea of some lesser crime; and further
informed him that if he pleaded not guilty he could have the
facts passed upon by a jury, who might find him guilty only of
the lesser offense, or not guilty of any offerse. The defend-
ant's counsel excepted to these admonitions, and, upon the
court asking defendant whether he pleaded guilty or not guilty
to the charge of murder as charged in the indictment, insisted
that the court should ask the defendant whether he pleaded
guilty or not guilty. The court, however, renewed the inter-
rogatory: "Do you plead guilty or not guilty to the charge of
murder as charged in the indictment?" to which defendant
replied, "Guilty." The court thereupon directed that the plea
of guilty be entered to the charge of murder as set out in the
indictment.

Upon the suggestion of the district attorney, and against
the objection of defendant's counsel, the court subsequently, in
the presence of the defendant and his counsel, and before pro-
nouncing judgment, examined several witnesses for the pur-
pose of informing itself as to the nature and circumstances of
the offense; from all which it appeared, as indeed was freely ad-
mitted, both then and upon the argument in this court, that the
crime was one of very great atrocity; the defendant having
confessed, and being abundantly corroborated by other evi-
dence, that during the temporary absence of his employer he
had murdered his wife and infant son with an axe after they
had retired to bed, and that the motive of the crime was the
plunder of a cash box kept in a trunk in Mrs. Snell's bed room.

A motion was made in arrest of judgment, but inasmuch as
none of the reasons assigned in support thereof were based
upon any defects in the indictment, it is unnecessary to con-
sider them. The court denied the motion, and thereupon
passed judgment and sentence of death upon the defendant.

But one point is urged upon us as a ground for the reversal

of the judgment. It grows out of the enactment by the legislature of certain amendments to the Penal Code. Section 249 of that code declares that "every person convicted of murder shall suffer death for the same." By Section 1 of the act of the legislative assembly approved February 21, 1883, (Laws 1883, c. 9, p. 16,) this section was amended to read as follows: "Every person convicted of murder shall suffer death, or imprisonment at hard labor in the territorial penitentiary for life, at the discretion of the jury." Section 2 of the same act provides that "upon trial of an indictment for murder, the jury, if they find the defendant guilty, must designate in their verdict whether he shall be punished by death, or imprisonment for life at hard labor, and the judgment of the court shall be in accordance therewith." The act always contains the usual general repealing clause. By act approved March 13, 1885, (Laws 1885, c. 29, p. 45,) Section 2 of the act of 1883 was amended by adding thereto, at the close, the words, "But upon a plea of guilty, the court shall determine the same."

The proposition of the defendant's counsel upon which he bases his demand for a reversal of this judgment is as follows: That Section 249 of the Penal Code was repealed by the act of 1883; that from that date until the amendment of March 13, 1885, there was no law authorizing judgment upon a plea of guilty; that the offense charged having been committed January 24, 1885, the act of March 13, 1885, was, to him, *ex post facto*, and therefore the defendant, by pleading guilty, was entitled to absolute immunity from punishment. The question is stated in the brief of defendant's counsel as follows: Is the law approved March 13, 1885, and under which judgment herein was rendered, authorizing the court to determine the grade of the offense and degree of punishment, upon a plea of guilty by persons charged with murder, *ex post facto*, as to this defendant? It is insisted that this question must be answered in the affirmative.

Upon the argument the proposition was broadly stated, somewhat as follows: "The defendant when he committed this act might, in contemplation of law, have said: 'I will murder

this woman, and may do so with perfect safety, because, if I am indicted for it, I will plead guilty, and in that case no penalty can be inflicted.'" It will be observed that this involves absolute immunity from punishment for all murders committed between February 21; 1883, and March 13, 1885, since it can hardly be supposed that anyone charged with that crime would plead not guilty, on the chance of securing a result which might be certainly secured by pleading guilty. The proposition is certainly a startling one—nay, more, it is shocking; and if true, would be a bitter reproach, indeed, to the legislature which enacted such a law; because, however dire the result, it must be presumed that the legislature intended to do just what they have by legal enactment accomplished, and hence, in this case, that they intended that murder, however atrocious, should go unpunished.

If such was their intention, they certainly might have effected it by much simpler means. A bare repeal of Section 249 of the Penal Code would have been entirely sufficient. But on the other hand, we are not to presume any such intention. We are not to conclude that the legislature designed to withdraw from society legal protection against this most awful crime, unless for the amplest and most convincing reasons, unless, indeed, we are driven to such a conclusion by considerations which are irresistible.

We are quite mindful of all that has been said and written by humane and enlightened jurists concerning the sacredness with which the law regards the rights and privileges of those charged with crime, especially when such charge involves the life of the accused. We are not ignorant that very many criminals have escaped punishment upon grounds which to the non-professional mind have seemed mere technicalities; nor do we desire to question the wisdom of the rule which declares that society must ascertain and punish offenders against its laws only under and through those regular forms which constitute what is known as ''due process of law.'' But even these considerations, just and salutary though they are, must have a limit, and it becomes those who are

charged with the duty of interpreting and administering the laws to be careful lest, in their anxiety to afford to even the most abandoned criminal the due protection of the law, they do not overstep the bounds and deprive society of that protection to which it also is justly entitled, and its right to which is surely just as sacred as that of any individual member. Such would seem to have been the views of our own law makers. The legislature has, in express terms, abrogated one rule of statutory construction which has doubtless often occasioned a failure of justice in particular cases. Section 10 of the Penal Code declares that "the rule of the common law that penal statutes are to be strictly construed has no application to this code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects, and to promote justice."

Our plain duty, then is to endeavor to ascertain the true intent and meaning of the legislature in enacting the amendatory statutes referred to.. Under a familiar rule governing the interpretation of statutes, we first inquire how the law stood prior to the statute of 1883. Criminal homicide might be either murder or manslaughter. Murder is not distinguished into degrees; there are two degrees in manslaughter. No change has been made in the law in this respect. But one punishment was affixed to the crime of murder. The penalty, in all cases, was death. Such being the law, the statute of 1883 was enacted, by the first section of which, it will be observed, Section 249 of the Penal Code is amended, while by the second section the verdict and judgment—that is to say, the procedure—is provided for. The amendment to Section 249 consists substantially, in the addition of the words, "or imprisonment for life at the discretion of the jury."

Can it be doubted that the primary intent of the legislature was, by this amendment, to mitigate the severity of the law by a recognition of the fact that some murders are of a more henious and atrocious character than others, even though all may be murders? Other states and territories have effected the same

object, perhaps more wisely, by distinguishing murder into degrees, and affixing the extreme penalty to the first degree only, and in such cases the statutes define what acts constitute the different degrees of the offense. The statute in question, however, makes no such distinction—declares no rule by which the penalty shall be determined—leaving it in the cases provided for wholly a matter of discretion. But whose discretion? The discretion of the jury. And what jury? It will be observed that the definite article is used; and since there is but one condition known to our law under which a jury can be empaneled, to-wit, upon issue joined on a plea of not guilty, it would seem that it was to such cases that the amendment was designed to apply.

The contention of the defendant's counsel, however, is that this very consideration leads inevitably to the legal conclusion that upon a plea of guilty no judgment can be passed; that inasmuch as it is only upon a plea of not guilty that a jury can be impaneled, in such cases only is there any tribunal empowered to determine his punishment. But to impute to the legislature such a design would be worse than absurd. It would defeat the very purpose for which penal laws are enacted, viz: the ascertainment and punishment of crime; and this we are bound to avoid, especially in cases where the new statute is merely amendatory of one already existing, and where the same general purpose must be presumed to continue. Bish. St. Crimes, §§ 5, 6, 7, 82, 90.

In the celebrated case of Green v. Com., 12 Allen, 155, a question arose as to the construction of a statute similarly worded. It appears that by Sections 1 and 2 of Chapter 160 of the General Statutes of Massachusetts, murder was divided into two degrees; the one capital and the other not. The third section provided that "the degree of murder shall be found by the jury." The accused having been indicted for murder, pleaded guilty of murder of the first degree, and his counsel afterwards contended that the court had no power to enter judgment, and award sentence of death, without the intervention of a jury; but the court, after suggesting that the mere phraseology of the third section seemed "rather to be adapted

to cases where a jury had beem impaneled to try the main issue of the guilt of the accused, than to declare a general rule that in all cases a jury is to determine the degree of murder," decided that a consideration of all the statutes regulating the procedure in criminal cases made this construction imperative; that no authority existed to impanel a jury except for the purpose of trying an issue between the parties; that there could be no issue where one party affirmed a fact and the other admitted it; and that the plea of guilty, being "the highest conviction," was entirely sufficient to support the judgment. A similar view of our own statute is encouraged by the fact that the second section prescribes that upon the trial "the jury," if they find the defendant guilty, must designate the punishment in their verdict.

But, again what effect is to be given to the alternative expression employed in Section 1 of the statute of 1883? The supreme court of California, on at least two occasions, has given us an interpretation of two similar statutes. By act of the legislature of that state of April 22, 1851, it was enacted that "every person who shall feloniously steal," etc., "shall be guilty of grand larceny, and, upon conviction thereof, shall be punished by imprisonment in the state prison for any term not less than one year, nor more than ten years, or by death, in the discretion of the jury." The report of the case is very imperfect, but apparently the jury found a general verdict, and the supreme court said: "It would seem, from the language of the act, that it was the intention of the legislature that the jury should only assess the punishment when, in the exercise of their discretion, they thought that the defendant deserved the punishment of death. If they did not agree to such punishment upon finding the defendant guilty, then they should find a general verdict." People v. Littlefield, 5 Cal. 355. This case was cited and approved by that court in the later case of People v. Welch, 49 Cal. 174, where the court were called upon to construe a statute upon the same subject, and in somewhat the same terms, as our own: "Every person guilty of murder in the first degree shall suffer death, or confinement in the state

prison for life, at the discretion of the jury trying the same, or upon a plea of guilty, the court shall determine the same." The jury had found the defendant "guilty of murder in the first degree, as charged in the indictment," but had not designated the penalty. The trial court thereupon pronounced judgment, and awarded sentence of death; and this was sustained by the supreme court, which held that it was only necessary for the jury to designate the penalty when, in their discretion, they believed the punishment of death to be too severe, in which case they might declare that it should be imprisonment for life.

Our statute, it will be observed, requires the jury in every case to designate the punishment, and a verdict without such designation would probably be insufficient; but it would seem that a plea of guilty would place the defendant precisely in the position in which the defendants in the two cases cited were placed by general verdicts of guilty. In the former the court might impose a sentence of imprisonment, within the limits prescribed by statute; in the latter. no discretion being vested in the court upon a verdict of guilty, the penalty was death. Such a construction is certainly to be preferred to one which would defeat the very purpose of the law in respect of the highest crime known to our code.

One other point was incidentally mentioned, and, though it was not urged upon the argument, we deem it best to notice it. It was suggested that by the plea of guilty the defendant only confessed his guilt of the lowest offense of which he could have been convicted by a jury under the indictment. Now, it is true that, under such an indictment as the one before us, a person might be convicted of some offense less than murder; but; in legal contemplation, this could only be where the jury should find some of the necessary elements of murder lacking; in other words, where they should find the indictment only partly true. But by a plea of guilty the defendant confesses the indictment to be wholly true, and therefore that his guilt is that of murder. 1 Bish. Crim. Proc. 1005a; People v. March, 6 Cal. 534; Kennedy v. State, 6 Ind. 485; Cook v. State; 24 N. J. Law, 846; Com. v. Hope, 22 Pick. 1; Fitzgerald v. People, 37

N. Y. 413; 462; Sayers' v, People, 68 Ill. 271. The other offenses referred to are not degrees of murder; so that it is unnecessary for us to express an opinion as to the effect of a general plea of guilty to an indictment charging a crime which is distinguished by statute into degrees.

We must conclude that the statute of 1883 effected no change in the existing law in those cases were a plea of guilty should be interposed, and that, aside from the statute of 1885, upon the plea offered by the defendant in this case, and accepted by the court, no alternative judgment was presented. The court could only pronounce sentence of death.

But if we are correct in this view, then the point so earnestly urged by defendants counsel, that the statute of 1885 was as to this case *ex post facto*, fails, since it will not be contended that a statute which in nowise increases the penalty, or the defendant's risk in respect thereof, but rather affords the possibility of its mitigation, is of the character suggested. This statute confers upon the court a power which it did not before possess, viz, to mitigate the penalty for murder, upon a plea of guilty, to imprisonment for life.

Whether, therefore, the court, in pronouncing judgment in this case, was governed by the considerations above expressed or not, we are of the opinion that that judgment was one which it was authorized by law to pronounce. The record shows that the utmost care was taken by the court to apprise the defendant of his legal rights, and of the peril of his plea, and we can discover no error in the proceedings.

We cannot, however, refrain from pointing out, what is so well illustrated in this case, how much labor and anxiety might be avoided by a little more care on the part of the framers of statutes,—a little more attention to the provisions of existing laws, and to the terms and phraseology of those by which it is sought to modify them. It is greatly to be regretted that the rule which imputes to the legislature the design which it has expressed in words is founded rather in necessity than in fact. Too many of our laws bear evidence of a lack of that attention to details which is essential to a wise system of legislation. It

ought to be possible for the legislature, especially in its penal statutes, to express its meaning so plainly as to preclude misunderstanding. We do not, however, mean to imply any doubt as to our conclusion in the present case. We should hesitate to affirm a capital judgment were we in doubt as to its soundness.

We can commend the zeal and energy with which the defendant's counsel discharged the painful duty to which he was assigned by the court, but we think that the judgment of the court was right, and must be affirmed.

EDGERTON, C. J., and FRANCIS, J., dissent.