## IN RE TYSON.

1. EX POST FACTO LAWS — EXECUTION OF CRIMINAL.— The act of the seventh General Assembly, substituting the state penitentiary for the county jail as the place of confinement pending execution, and directing that executions, which had before taken place publicly, should thereafter take place within the penitentiary walls, is not in these respects *ex post facto* as to one under sentence when the act took effect, as it does not change the punishment to his disadvantage.

2. SAME — SOLITARY CONFINEMENT.— Nor is the act *ex post facto* in that it designates the confinement as solitary, where it also provides that the accused may be visited by "attendants, counsel, physician, a spiritual adviser, * * * and members of his family."

3. CONSTRUCTION OF STATUTORY PHRASES — COMPUTATION OF TIME.— Under the former law (Gen. Laws, § 729) the execution could not take place within fifteen days from sentence. The later act provided that the judge should designate "a week of time within which such sentence must be executed. Such week so appointed shall be not less than two nor more than four weeks from the day of passing such sentence." *Held*, that the "week of time" was a calendar week, beginning Saturday at midnight, and hence the execution could not, under the new law, take place within fifteen days of sentence, and the law did not shorten the time before execution.

*Application for Habeas Corpus.*

Messrs. WYCOFF & BRIERLY, for petitioner.

I. N. STEVENS, district attorney, with whom were O. W. JACKSON and THOMAS WARD, JR., for the state.

MR. JUSTICE HAYT delivered the opinion of the court.

The petitioner was indicted in the district court of Arapahoe county on the 5th day of June, 1889, for the murder of one John King. The murder is charged to

have been committed upon the 18th day of May, A. D. 1889. The cause was tried, and a verdict of guilty of murder of the first degree rendered sometime during the following June, although sentence was not pronounced upon the verdict until the 26th day of July, at which time he was sentenced to suffer the death penalty within the walls of the state penitentiary, at such time during the third week in the month of August following as the warden of said institution might select. The week of execution has been postponed from time to time by order of the governor; the petitioner, at the time of issuing this writ of *habeas corpus*, being in custody of the sheriff of Arapahoe county, awaiting a judicial determination of an inquisition of lunacy which had been commenced at the instance of his counsel.

By the law in force at the time of trial, as well as at the time the offense was alleged to have been committed, the penalty for murder of the first degree was death, and by statute it was provided that this punishment should be inflicted by hanging the person convicted, by the neck, until dead, at such time as the court should direct, not less than fifteen nor more than twenty-five days from the time of sentence. Gen. Laws, § '729. Under this law it was the practice to keep the defendant in close confinement in the county jail from the time sentence was pronounced until the day appointed for execution. He was then executed, under the direction of the sheriff, within the county where the conviction was obtained. The seventh general assembly enacted a law substituting the state penitentiary for the jail of the county as the place of such confinement, and directing that, whenever it became necessary to inflict the death penalty in the future, the person convicted should be executed within the walls of such penitentiary. This statute contains no saving clause, but extends to all cases in which the death penalty is thereafter to be inflicted, without regard to the time at which the crime

may have been committed, whether before or after the adoption of the act; and also contains a clause repealing all other acts or parts of acts in conflict therewith.   Other provisions of the statute will be given in another portion of the opinion.   The act received the governor's approval upon the 19th day of April, 1889, and went into effect ninety days thereafter.   The petitioner having been sentenced upon the verdict of the jury after this law had gone into effect, and in accordance with its terms, we are now asked to declare such sentence void, and discharge the prisoner, for the alleged reason that such a law is *ex post facto* as to him, and, consequently, obnoxious to both the federal and state constitutions; the argument advanced being that the prisoner was in jeopardy under the old law, but that, such law having been repealed since his trial, he cannot be punished thereunder; that the new law is *ex post facto* and unconstitutional as to him; therefore he cannot be punished at all, but must be discharged.

In our judgment the new law does not come under the constitutional inhibition relied upon.   *Calder v. Bull*, 3 Dall. 386–390, is recognized as the leading case in this country upon the subject, and in that case Chase, J., said: "I will state what laws I consider *ex post facto* laws, within the words and the intent of the prohibition: (1) Every law that makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action.   (2) Every law that aggravates a crime or makes it greater than it was when committed.   (3) Every law that changes the punishment and inflicts a greater punishment than the law annexed to the crime when committed.   (4) Every law that alters the legal rules of evidence, and receives less or different testimony than the law required, at the time of the commission of the offense, in order to convict the offender."

The statute of which complaint is made does not attempt to make that criminal which was not criminal

before. It does not aggravate the crime nor alter the rules of evidence. It cannot, therefore, be considered as an *ex post facto* law under the rule given, unless it changes the punishment for the offense to the disadvantage of the defendant. That it does so change the punishment is urged by counsel, in that it changes the place of execution, and provides for solitary confinement in the penitentiary for the period between sentence and execution; and for the further reason that it permits the court to shorten the time between sentence and execution from fifteen days to two weeks, as it is said. Other changes were enumerated in the argument, but these are the ones principally urged, the others being subsidiary; if these objections are not well taken, the others fall with them.

It is to be remembered that by section 2 of the act of 1883, the same being section 709 of the General Statutes, murder is divided into two degrees, *i. e.*, murder of the first degree, and murder of the second degree. This section has stood from its adoption unrepealed and without amendment. By this act, death was fixed as the punishment for murder of the first degree. By section 729, General Statutes, it is provided that this punishment shall be inflicted by hanging, and this is not changed by the amendment of 1889. So it will be seen that at the time of the perpetration of the crime, and at the time of the trial, the punishment for murder in the first degree was death by hanging; and such is still the law.

It is a part of the public history of the state that prior to the passage of this act the death penalty with us was usually inflicted in public, at a previously advertised hour, in the presence of a large concourse of people, and the particulars of the execution published in the public journals. In deference to the wish of many good citizens, who were of the opinion that the tendency of such proceedings was detrimental to the public morals, the recent statute was passed, requiring executions in the

future to be conducted privately, at the penitentiary, enjoining secrecy upon the few persons required or permitted to be present; and making it a misdemeanor, punishable by fine, for such persons to disclose the details of the execution, or for the press to publish the same. To accomplish the desired change, it became necessary to change certain incidents connected with the punishment, but no attempt was made to change the punishment itself. This remains the same as before the passage of the act.

To the argument based upon the change in the place of execution, we say that, in legal contemplation, there is no difference between an execution in one place within the state and in another. The punishment is not aggravated by being inflicted in the county of Fremont rather than in the county of Arapahoe, where the trial took place. The penalty has not been changed, but only the locality where it is to be inflicted. The case of *Carter v. Burt*, 94 Mass. 424, is directly in point upon this question. In that case the prisoner had been convicted of being a common seller of intoxicating liquors without license, and sentenced to pay a fine of $50, and to be imprisoned in the house of correction for three months. By the statute in force at the time the offense was committed it was provided that the imprisonment in such cases should be in the house of correction in the county where the court was holden; while by a subsequent enactment, in force at the time of sentence, it was provided that any person under sentence for such offenses might be committed, at the discretion of the court, "to the house of correction in any county in the commonwealth in the same manner as such person might be committed in the county where the court is so holden." It was claimed in argument that the latter law aggravated the punishment, and was therefore *ex post facto* as to such offense; but the court held that such argument was fallacious, that the rights of a person convicted were not materially affected by the

change, and that the punishment was not aggravated by an imprisonment in one county rather than in another. If the argument in this case, based upon the change in the place of execution, is sound, then, in case future legislation should change the location of the penitentiary to a county other than Fremont, and thereby change the place of execution, it would likewise follow that a change so made would be subject to the same objections — a conclusion we cannot indorse. We think the argument unsound, and that the constitutional objection based thereon is not well taken. In arriving at this result we have not overlooked the case of *Garvey v. People*, 6 Colo. 559. It seems to us, however, that counsel have confounded certain incidents connected with the administration of the penalty with the punishment itself.

Counsel say that the punishment in this case is aggravated by reason of the change in place of confinement from the county jail to the penitentiary. We are aware that in many well-considered cases it has been held that a change in the place of confinement from an institution where criminals convicted of minor offenses are incarcerated to one established for the imprisonment of those convicted of more heinous crimes has been held as an aggravation of the punishment, on account of the disgrace and reproach attached to the confinement with criminals of a more depraved and infamous character; but this reason can have no application in the case of one convicted of wilful, deliberate and premeditated murder, and awaiting execution therefor. And the reason for the rule failing the rule itself must also fail. Aside from this, the defendant is imprisoned for the purpose only that he may be produced at the time set for his execution, the confinement being no part of the punishment, but simply an incident connected therewith, referable to penal administration as its primary object; and such changes may be made applicable to past as well as future offenses. *Hartung v. People*, 22 N. Y. 95-105; Cooley, Const. Lim.

271, 272. And, although the statute designates such confinement as solitary, provision is made in the same paragraph of the act in which this term is used for his "attendants, counsel, physician, a spiritual adviser of his own selection and members of his family" to visit him in accordance with the prison regulations, the effect of which is to give the prisoner as many liberties as he would have been entitled to under the old law. So, while the imprisonment is designated as solitary, it is not so in fact, as solitary imprisonment is usually understood.

It is said in argument that under the new statute the time between the date of the sentence and the execution may be shortened, the former law providing against the court's directing the execution to take place within less than fifteen days from the time of sentence, while under the new enactment it is provided that the judge passing sentence "shall appoint and designate in the warrant of conviction a week of time within which such sentence must be executed. Such week, so appointed, shall be not less than two nor more than four weeks from the day of passing such sentence;" the particular time of execution within the week being left to be fixed by the warden of the penitentiary. If under this act the defendant might be hanged within less than the minimum of time from the date of passing sentence enjoined by the former statute, we would unhesitatingly say that the law could not be made applicable to his case; as to hold otherwise would be contrary to the rule forbidding a change of punishment to the disadvantage of the defendant, after the commission of the crime; and slight changes in this respect have been held sufficient to make the law *ex post facto* and void as to past offenses. Thus in *Com. v. McDonough*, 95 Mass. 581, it was decided that a law enacted after the commission of the offense of which the defendant was charged, which decreased the maximum of imprisonment that might have been inflicted, and also the fine, was unconstitutional as to that offense, for the

reason that it fixed the minimum of imprisonment at three months, whereas, before that time, there was no minimum fixed to the court's discretion. A careful examination of the statute of 1889 discloses, however, the fact to be that in no event will the terms of the act permit an execution to take place thereunder within less than fifteen days from the time of sentence, as provided in the former act. In arriving at this conclusion we do not rely in the least upon the distinction which some courts have drawn between cases where time is to be computed from an act done and those in which it is to be reckoned from a given day; holding that in the former case the day upon which such act is performed is to be counted, and in the latter not. See *Arnold v. U. S.* 9 Cranch, 104; and also cases cited in Bouvier's Law Dictionary, under the word "Time." We prefer to rest our decision upon something different, and, as we think, more substantial.

The command of the statute is that a week of time shall be fixed by the court within which the sentence must be executed, such week not to be less than two weeks, nor more than four weeks, from the day of passing sentence. We are of the opinion that the week of time so to be fixed must be held to be a calendar week, *i. e.*, a period of time extending from 12 midnight, Saturday, until 12 midnight, the following Saturday. By consulting lexicographers of established accuracy, this conclusion will be found to be in accordance with the primary and usual definition given to the word "week."

"Week. The period of seven days; particularly the period of seven days commencing with Sunday." Worcest. Dict. "A period of seven days; usually, that reckoned from one Sabbath or Sunday to the next." Webst. Dict. "Seven days of time. The week commences immediately after 12 o'clock on the night between Saturday and Sunday, and ends at 12 o'clock, seven days, of twenty-four hours each, thereafter." Bouv. Law Dict.

The word was judicially construed in accordance with the foregoing definitions in the case of *Ronkendorff v. Taylor*, 4 Pet. 361, where it is said: "A week is a definite period of time, commencing on Sunday and ending on Saturday." It follows from this construction that while in most cases more than two full calendar weeks must necessarily elapse, under the statute, between the time of sentence and the execution, in no case could such execution take place within less than fifteen days from the date of sentence. Sunday being a non-juridical day, the most favorable case possible in support of the theory advanced by counsel for the prisoner — that the time could be shortened under the late act — would arise if a defendant should be sentenced upon a Saturday. For convenience we will assume that such Saturday is the 1st day of the month. The week of execution could in no event commence to run until the third Sunday thereafter,— the 16th day of the month,— which would be the earliest possible day for the sentence to be executed under the terms of the act. And the same result would follow under the former law requiring at least fifteen days from the time of sentence to the execution; as it has been decided in this state that when time is to be computed, either prior or subsequent to a day named, the usual rule is to exclude either the first or last day of the designated period, and include the other. *Stebbins v. Anthony*, 5 Colo. 348. So, under either law in the case supposed, a sentence might be executed upon the sixteenth day for aught that appears in either act to the contrary.

We are not, on account of the illustration given, to be understood as sanctioning the execution of the death penalty upon the Sabbath day. Such a course would be highly improper, if not positively illegal. If the latter, an additional day would be gained under the new law.

In addition to the authorities hereinbefore cited, we refer to the following in support of the conclusion reached in this opinion: 1 Bish. Crim. Law, § 280 *et seq.;*

Whart. Crim. Law, § 31; Wade, Retro. Law, § 283; *State v. Arlin*, 39 N. H. 179; *Marion v. State*, 20 Neb. 233.

It appearing that the sentence pronounced by the district court is in accordance with the views herein expressed, the prisoner must be remanded, and it is so ordered.

*Prisoner remanded.*