STATE *v.* ROONEY.

Opinion filed June 24, 1903.

**Chapter 99, Laws 1903, Not Ex Post Facto.**

  1.  Chapter 99, Laws 1903, substituting the penitentiary for the county jail as the place of confinement pending execution, and directing that executions should thereafter take place within the penitentiary walls, does not operate to increase the punishment of one convicted of murder in the first degree, with the death penalty affixed; nor is it a change of the punishment to the disadvantage of the prisoner, or a change of punishment at all. Such statute is not *ex post facto* as applied to one who was convicted before its passage.

**Such Law Relates to Penal Administration Only, and Does Not Increase Penalty.**

  2.  The 1903 statute was passed after appellant had been convicted of murder, and the death penalty prescribed in the verdict. This act required the execution to be fixed on a day not less than six or more than nine months after the entry of judgment, and within the walls of the penitentiary. The former statute required the execution to be had in the county jail in not less than three or more than six months after judgment. Appellant was sentenced under the 1903 statute. The changes effected by the new law relate solely to penal administration, and it was within the power of the legislature to make them applicable to past as to future cases. The extension of the time within which execution may take place after sentence is a mitigation, and not an increase of punishment, is to the advantage of the convict, and does not render the act *ex post facto* as to him. The change of place of confinement, pending execution, from the county jail to the state penitentiary, can add no disgrace or infamy to a condemned murderer, and such changes do not render the act *ex post facto* as applied to appellant.

**"Close Confinement" Not "Solitary Confinement."**

  3.  The words "close confinement," in chapter 99, Laws 1903, are used in the sense of safe, secure confinement, and work no change in the rigor of imprisonment from that imposed in the former statute. These words are not used in this context as synonymous with "solitary confinement."

Appeal from District Court Cass County; *Pollock, J.*

John Rooney was convicted of murder in the first degree, and his punishment fixed at death. He appeals from the judgment. Affirmed.

*W. S. Stambaugh,* for appellant.

The court erred in sentencing appellant on March 31, 1903, as the law in force, when the crime was committed, was repealed by a statute taking effect March 9, 1903. Section 5142, Rev. Codes 1899, is a general saving clause, to be read into statutes repealing punishments for crime, unless a different purpose is plainly expressed by the legislature. The statute is a copy of section 13, U. S. statutes at large. See 1 Gould and Tucker, Notes on U. S. Statutes 13.

Section 8305, Rev. Codes 1899, is amended and re-enacted by the law of 1903, and all acts in conflict are repealed. Laws of 1903, chapter 99. The defendant cannot be punished under the repealed law. *Hartung* v. *People,* 22 N. Y. 95; *Kring* v. *State of Mo.,* 107 U. S. 221, 27 L. Ed. 506; *Ex parte Medley,* 134 U. S. 106, 33 L. Ed. 835; *People* v. *McNulty,* 28 Pac. Rep. 816.

The law in force at the time of the offense, of which defendant was convicted, provided as punishment, confinement in jail not less than three nor more than six months and hanging by the sheriff of the county. The law of 1903 provides close confinement in the state penitentiary not less than six nor more than nine months, and execution by its warden.

The law of 1903 is *ex post facto* and void because it "changes the punishment and inflicts a greater punishment than the law annexed to the crime when committed." Imprisonment in the penitentiary is greater punishment than imprisonment in the county jail. *Ex parte Medley, supra; People* v. *McNulty, supra.*

The law of 1903 not only imposes a greater punishment in kind, but adds three months to the term of imprisonment. While the maximum term under the old law, is the minimum under the new, it is not what will, but what may, be inflicted, that determines the increase of punishment. *Wilson* v. *O. & M. R. R. Co.,* 16 Am. Rep. 565.

It cannot be that imprisonment of one under a death sentence is a mere incident and detail, and no part of the sentence or punishment. *Ex parte Medley, supra; People* v. *McNulty, supra.* Any change which does not mitigate the punishment, renders the statute *ex post facto* and void. *State* v. *McDonald,* 20 Minn. 126; *People* v. *Dane,* 45 N. W. Rep. 655.

*Emerson H. Smith,* State's Attorney, *J. A. McEldowney* and *W. H. Barnett,* for the state.

Section 8305 is not repealed by act of 1903, so far as it relates to the penalty, the only change being as to the time of the execution. The court may simply postpone the execution ninety days. The penalty is the same in both. Postponement of the execution is in no-wise additional punishment. It gives defendant further time for investigation of the facts of his case, and often results beneficially to him. Even when hope of reprieve, commutation of sentence, or a new trial is gone, it allows him time for preparation for enternity. Restraint at the penitentiary adds no greater ignominy to the name of the defendant. He is already branded by the verdict as a felon, unfit to live. The statute adds nothing by the new law other than is found in the old.

An *ex post facto* law is one which inflicts a greater punishment than the law in existence at the time that the crime was committed affords. *Calder* v. *Bull,* 3 Dallas 386, 1 L. Ed. 648. Tested by this rule, can it be said that the law of 1903 is *ex post facto,* because it detains the defendant in the penitentiary waiting execution, and gives the trial court discretion to delay execution ninety days?

Under section 5142, Rev. Codes 1899, the repeal of an act defining crime and its punishment does not prevent the prosecution and conviction of a party for its violation. *U. S.* v. *Barr,* 4 Saw. 254; *U. S.* v. *Mathews,* 25 Fed. Rep. 74; *U. S.* v. *Ulrici,* 3 Dil. 532. Sutherland on Stat. Con. 225, 226.

If the court finds that section 5142 must be read into the law of 1903, then it is not necessary to consider the constitutionality of the law of 1903, whether it is *ex post facto,* increases or decreases punishment; but it has but to order the trial court to proceed according to the law as it exists In re *Parks,* 45 N. W. Rep. 824; *People* v. *Bemis,* 16 N. W. Rep. 794; *ex-parte Gilmore,* 12 Pac. Rep. 800; *State* v. *Marple,* 14 Pac. Rep. 521; *Ratzky* v. *People,* 29 N. Y. 127.

Errors and mistakes, unless prejudicial, not regarded. Section 8423 Rev. Codes 1899.

COCHRANE, J. The defendant was convicted of the crime of murder in the first degree for the killing on August 26, 1902, of Harold C. Sweet. On March 9, 1903, chapter 99, Laws 1903, went into effect, changing the former statute as to place of inflicting the death penalty from the county jail to the penitentiary, and extending the time after sentence within which the judgment of death should be carried out. On March 31, 1903, defendant was sentenced to be conveyed to the penitentiary of the state of North Dakota, at Bis-

marck, there to be kept in close confinement until October 9, 1903, and then and there to be hanged by the neck until 'dead. This appeal is from the judgment.

Appellant insists that the law in force at the time of the offense for which he was convicted has been repealed, and that he cannot be punished under it, and that the statute (chapter 99, Laws 1903) as applied to his offense, is *ex post facto,* unconstitutional, and void; that he cannot, therefore, be punished under the provisions of that statute; that there is no law in this state under which the death penalty can be inflicted upon him; and that he must be discharged.

By the statute in force at the time of the homicide for which appellant stands convicted, and also at the time of his trial and conviction, it was provided: "Every person convicted of murder in the first degree shall suffer death or be imprisoned in the penitentiary for life." Section 7068, Rev. Codes 1899. "The jury before whom any person prosecuted for murder is tried, shall, if they find such person guilty thereof, fix and determine by their verdict, the punishment to be inflicted, within the limits prescribed by law, as for example, if they find such person guilty of murder in the first degree, they must designate in their verdict whether he shall be punished by death or imprisonment in the penitentiary for life." Section 7073, Rev. Codes 1899. "The jury before whom any person prosecuted for murder is tried, shall, if they find such person guilty thereof, determine by their verdict, whether it is of murder in the first degree or of murder in the second degree." Section 7072, Rev. Codes 1899. "Whenever any person is convicted of murder by the verdict of a jury, it shall be the duty of the court to enter judgment against such person, in accordance with such verdict, or otherwise as provided by section 8247 of the Code of Criminal Procedure." Section 7074, Rev. Codes 1899. Section 8319 provides that "the punishment of death must be inflicted by hanging the defendant by the neck until he is dead." By section 8321 it is provided that "a, judgment of death must be executed within the walls or yard of the jail of the county in which the conviction was had, or within some convenient enclosure within said county." Section 8320 provided: "When there is no jail within the county, or whenever the officer having in charge any person under the judgment of death, deems the jail of the county where the conviction was had, insecure, unfit or unsafe for any cause, such officer may confine such person in the jail of any other convenient county of the state." Section 8305, Rev. Codes

1899, provided that, "when judgment of death is rendered, the judge must sign and deliver to the sheriff of the county, a warrant duly attested by the clerk under the seal of the court, stating the conviction and judgment, and appointing a day on which the judgment is to be executed, which must not be less than three months after the day in which the judgment is entered, and not longer than six months thereafter."

The legislative assembly passed an act, which was signed and approved on the 9th day of March, 1903, after the trial and conviction, but before the sentence, of appellant, the title of which act is "An act defining the mode of inflicting the death penalty; designating the warden of the North Dakota penitentiary executioner; prescribing that the death penalty shall only be inflicted within the walls of the North Dakota penitentiary; how execution may be suspended, and amending sections 8305 and 8308, of the Revised Codes of North Dakota of 1899." This act is known as chapter 99, Laws 1903. Section 1 of this act provides that "The mode of inflicting the punishment of death shall be by hanging by the neck until the person is dead; and the warden of the North Dakota penitentiary, or in case of his death, inability, or absence, a deputy warden shall be the executioner; that the punishment shall be inflicted within the walls of the penitentiary at Bismarck, within an enclosure to be prepared for that purpose under the direction of the warden and the board of trustees." Section 2 provides that "executions of the death penalty by hanging shall take place on the day designated by the judge passing sentence, but before the hour of sunrise of the designated day." Section 3 provides that "all writs for the execution of the death penalty shall be directed to the sheriff by the court issuing them, and the sheriff of the county wherein the prisoner has been convicted and sentenced, shall, within ten days thereafter, convey the prisoner to the penitentiary, where he shall be received by the warden or keeper, and kept in close confinement until the day designated for the execution; that a certified copy of the judgment and warrant to execute shall be delivered to the warden, and a receipt taken from the warden for the prisoner." Section 14 of this act reads "that section 8305 of the Revised Codes of 1899, relating to judgment of death, warrant to execute, be amended so as to read as follows: 'Section 8305. When the judgment of death is rendered the judge must sign and deliver to the sheriff of the county a warrant duly attested by the clerk under the seal of the court, stating

the conviction and judgment and appointing a day upon which the judgment is to be executed, which must not be less than six months after the day in which the judgment is entered and not longer than nine months thereafter.'" Section 16 of this act repeals all acts and parts of acts in conflict with the provisions of this act, and section 17 contains an emergency clause, as follows: "Whereas, an emergency exists in this, that there are now several persons in the state under sentence of death before the first of July, 1903, and if said persons are executed according to the existing laws the erection of several scaffolds will be necessary, which will entail considerable cost; therefore this act shall take effect and be in force from and after its passage and approval." By section 67 of the state constitution it is provided that "no act of the legislative assembly shall take effect until July 1st, after the close of the session, unless in case of emergency (which shall be expressed in the preamble or body of the act) the legislative assembly shall, by vote of two-thirds of all the members present in each house, otherwise direct."

It is apparent from the emergency clause (section 17 of this act) that the legislative assembly intended to have the same take effect at once, upon its passage, and that its terms should control in the pronouncing and execution of judgments of death in cases where the crime of murder in the first degree had been committed prior to its passage and approval. As to offenses committed subsequent to its approval, no constitutional objection can be urged against this legislation. But as to appellant, it is contended that this act changes the punishment so that a different penalty may be inflicted, under the operation of this act, from that which could have been inflicted upon him under the law as it existed at the time his offense was committed; that this later act increases the punishment, and therefore is a change to the disadvantage of the convict; and, for this reason, that chapter 99, Laws 1903, as applied to him, is *ex post facto* and void.

The law as contained in the Rev. Codes of 1899, and as it was prior to the sentencing of the appellant, is changed by the later act in three particulars: First. The execution of the death penalty must take place in the penitentiary, and be inflicted by the warden or his deputy, and not by the sheriff in the county where the offense was committed. Second. The time appointed for execution is changed so that the convict may be allowed a longer time to live between his sentence and his execution; the time fixed to be not less than six

nor more than nine months after the entry of judgment, while under the former statute the time was not less than three nor more than six months after the entry of judgment. Third. The convict, under the new and amendatory act, is confined in the penitentiary, pending execution, instead of the county jail.

The question for determination is this: Was the statute (chapter 99, Laws 1903) under which this judgment was entered *ex post facto* and void, as applied to appellant? The passage of *ex post facto* laws is inhibited by both the federal and the state constitutions. The section of the federal constitution (section 10, article 1), towit, "No state shall pass any *ex post facto* law," has been frequently considered and expounded by the Supreme Court of the United States, and its interpretation of this supreme law of the land is binding upon this tribunal. The court has said: "The plain and obvious meaning and intention of the prohibition is this: that the legislatures of the several states shall not pass laws, after a fact done by a subject or citizen, which shall have relation to such fact, and shall punish him for having done it. The prohibition considered in this light, is an additional bulwark in favor of the personal security of the subject, to protect his person from punishment by legislative acts having a retrospective operation." *Calder* v. *Bull,* 3 Dall. 386, 390 1 L. Ed. 648. Justice Chase, in enumerating what laws he considered *ex post facto,* within the rules and intent of the prohibition, specified "every law that changes the punishment and inflicts a greater punishment than the law annexed to the crime when committed." *Calder* v. *Bull,* 3 Dall. 390, 1 L. Ed. 648; Cooley, Const. Lim. 322. "But," he added, "I do not consider any law *ex post facto,* within the prohibition, that mollifies the rigor of the criminal law, but only those that create or aggravate the crime, or increase the punishment, or change the rules of evidence for the purpose of conviction." Justice Washington declared *ex post facto* any law "which, in its operation, makes that criminal or penal which was not so at the time the act was performed, or which increases the punishment, or, in short, which, in relation to the offense or its consequences, alters the situation of a party to his disadvantage." *U. S.* v. *Hall,* 26 Fed. Cas. 84, affirmed in 6 Cranch, 171, 3 L. Ed. 189; *Kring* v. *Missouri,* 107 U. S. 221, 2 Sup. Ct. 443, 27 L. Ed. 506; *Hopt* v. *Utah,* 110 U. S. 574, 4 Sup. Ct. 202, 28 L. Ed. 262; in re *Medley,* 134 U. S. 160; 10 Sup. Ct. 384, 33 L. Ed. 835; *Garvey* v. *People,* 6 Colo. 559, 45 Am. Rep. 531; *People* v. *McNulty* (Cal.) 28

Pac. 827; *Sage* v. *State* (Ind.) 26 N. E. Rep. 669; *U. S.* v. *Cannon* (Utah) 7 Pac. 388; *Lindsey* v. *State* (Miss) 5 South. 99, 7 Am. St. Rep. 674; in re *Wright* (Wyo.) 27 Pac. 566; *Marion* v. *State,* 16 Neb. 349, 20 N. W. Rep. 289. In *Fletcher* v. *Peck,* 6 Cranch 87, 138 3 L. Ed. 162, Chief Justice Marshall defined an *ex post facto* law to be one which makes an act punishable in a manner in which it was not punishable when committed. *Cummings* v. *Missouri,* 4 Wall. 277, 18 L. Ed. 356; *ex parte Garland,* 4 Wall. 333, 18 L. Ed. 366; *Shepherd* v. *People,* 25 N. Y. 406; in re *Petty,* 22 Kan. 482; *State* v. *McDonald,* 20 Minn. 136 (Gil. 119). But this definition is subject to the qualification that, where the new law mitigates the character or punishment of a crime already committed, it does not fall within the prohibition of the constitution, for it then is in favor of the citizen. In re *Petty,* 22 Kan. 482; *Lindsey* v. *State* (Miss.) 5 South. 101, 7 Am. St. Rep. 674; Cooley, Const. Lim. 329; *People* v. *Hayes,* 140 N. Y. 484, 35 N. E. Rep. 951, 23 L. R. A. 830, 37 Am. St. Rep. 572. As to Justice Marshall's definition of an *ex post facto* law, Justice Peckham (now of the Supreme Court of the United States), for the court of appeals of New York, in *People* v. *Hayes,* 140 N. Y. 484, 35 N. E. Rep. 951, 23 L. R. A. 830, 37 Am. St Rep. 572, said: "That it materially affects the punishment prescribed for a crime is not the true test of an *ex post facto* law. In regard to punishment, it must affect the offender unfavorably, before it can be thus determined. It seems to us plain that there can be no reason for any other view. I do not think that the mere fact of an alteration in the manner of punishment, without reference to the question of mitigation, necessarily renders an act obnoxious to the constitutional provision. I know it is alluded to in two cases in this state. *Hartung* v. *People,* 22 N. Y. 95; *Shepherd* v. *People,* 25 N. Y. 406. In those cases the alteration was not merely in the manner. It was an alteration from capital punishment to be inflicted in a certain manner and within a certain time after sentence was pronounced, to a punishment of a year's hard labor in state's prison, and then a possibility of capital punishment thereafter, at any time during the life of the criminal. *   *   *   I think that where a change is made in the manner of the punishment, if the change be of that nature which no sane man could by any possibility regard in any other light than that of a mitigation of punishment, the act would not be *ex post facto,* where made applicable to offenses committed before its passage."

Under the terms of the 1903 act, this appellant is sentenced to close confinement in the penitentiary for six months and nine days before his execution can take place, and the court might have made the time anything short of nine months from the date of pronouncing judgment. He claims that close confinement in the penitentiary and the nine days' time over what was possible under the former law, constitutes this an increase of punishment over any it was in the power of the court to impose at the time the homicide was committed, and thus brings his case within each and every of the definitions of an *ex post facto* law hereinbefore stated.

The words "close confinement," as used in the statute and sentence, mean that the convict shall be safely and securely kept in confinement pending the execution of the judgment of death. They add nothing to the rigor of the former statute (section 8320, Rev. Codes 1899), which permitted the officer having in charge one under judgment of death, when he deemed the jail insecure or unsafe, to confine such person in any other jail of the state where he could be safely and securely confined; safety and security, through confinement, being the unchanged purpose of both statutes. Neither before nor since the act of March 9th could one convicted of a capital offense be admitted to bail. Appellant is entitled to as many privileges now, in the penitentiary, as the sheriff, under the former law, could accord to him in the county jail. No additional restrictions are placed upon his seeing his legal or spiritual adviser or members of his family. This statute works no change, in so far as it describes his confinement as close; nor is the word "close" synonymous with the word "solitary," as the latter term is used in the Medley case. It is there pointed out that the word "solitary" has a well defined and well understood legal significance. The change made in the Colorado statute, considered by the Supreme Court in the Medley case, was from a close confinement in the jail where the convict could be visited in the place of his confinement by his family, his legal, spiritual or medical adviser, without restriction, to solitary confinement, which excluded the possibility of such visits, and inhibited them, except under the restrictions of prison rules, which might prohibit them altogether.

The contention here made that appellant's confinement in the penitentiary is necessarily and in fact solitary—that, under the law regulating the control of convicts in the penitentiary, and the rules of prison discipline in this state, he is shut out from seeing all human

beings—is answered, in this: That the law has not been changed in this regard from what is was when his offense was committed. The statute, then, as it now, requires close confinement, as we have already shown. Neither the law, the judgment, nor the commitment require solitary confinement. The prison rules are not before us, but no presumption can be indulged that the officers of the penitentiary charged with the execution of the judgment of the court will go beyond the letter of its mandate, and make appellant's confinement solitary, in fact, when there is no legal authority therefor, and when to do so would, as to appellant, be illegal. *Holden* v. *State,* 137 U. S. 483, 11 Sup. Ct. 143, 34 L. Ed. 734.

That the penitentiary is in another part of the state from the county in which he was tried, and that he is thus further removed from possible visits of friends, is of no importance. He could, under the former statute, be removed to and confined in a jail in another part of the state. Section 8320, Rev. Codes 1899. The fact that the place of his confinement has been changed from the county jail to the penitentiary, pending execution, and that the place of execution has also been changed, does not render the 1903 statute *ex post facto*. The law has at all times required the confinement of persons convicted of capital offenses between the time of sentence and execution. The purpose of the confinement is that the convict may be produced at the time set for his execution, and that society may be protected against an outlaw in the meantime. The confinement is no part of the punishment, but is an incident connected therewith, referable to penal administration as its primary object. In re *Tyson,* 13 Colo. 487, 22 Pac. 810, 6 L. R. A. 472; *Hartung* v. *People,* 22 N. Y. 95; *Gut* v. *State,* 9 Wall. 35, 19 L. Ed. 573. In *Holden* v. *State,* 137 U. S. 483, 11 Sup. Ct. 143, 34 L. Ed. 734, it is said: "There is no ground upon which it can be held that his mere imprisonment in execution of the sentence of death is in violation of the constitutional provision against *ex post facto* laws. The sentence, the subsequent imprisonment under it, not in solitary confinement, and the warrant of execution, are in accordance with the law of the state as it was when the offense was committed, and do not infringe any right secured by the constitution of the United States." The Medley case, 134 U. S. 160, 10 Sup. Ct. 384, 33 L. Ed. 835, is not authority for the proposition urged that confinement in the penitentiary, instead of the county jail, pending his execution, is an aggra-

vation of his punishment, because the disgrace of confinement in the penitentiary is greater than attaches to confinement in the county jail. Nothing can aggravate the disgrace and infamy attendant upon. and following a capital conviction for willful, deliberate, and premeditated murder. In re *Tyson,* 13 Colo. 487, 22 Pac. 810, 6 L. R. A. 472.

The language used by Justice Gray, in the Medley case, characterizing the penitentiary as a place for the punishment of infamous crimes, is used in his demonstration of the proposition that solitary confinement in the penitentiary of the convict, where he was cut off from the visits of his spiritual and his legal adviser and of friends, was an additional infliction to confinement in the jail, where he could have been so visited, and where such restrictions were not imposed; and it seems clear from the context that it was not the intention to, nor does the opinion, declare that change of the place of confinement from a county jail to the penitentiary, of one already rendered infamous by conviction of the felony punishable by death,. could be treated as an aggravation of punishment, in that it carries. with it disgrace and infamy.

That the 1903 statute requires the day of execution to be fixed at not less than six nor more than nine months after the pronouncing of judgment has the effect to add a period of imprisonment to the death penalty, and that appellant is condemned, under its operation,. to nine day's imprisonment beyond what could have been given him under the law in force when his crime was committed, does not render the law *ex post facto* as to him. The law fixing the punishment for murder in the first degree was, at the time this homicide was committed, and it is now, the same. It has been in no way changed. The mode of inflicting the death penalty was then, and is now, by hanging the convict by the neck until dead. The changes. effected have reference only to the mode of carrying out the sentence, and do not affect the substantial rights of the convict. *Holden* v. *State,* 137 U. S. 483, 11 Sup. Ct. 143, 34 L. Ed. 734. "Any change which is referable to prison discipline or penal administration as its primary object may be made to take effect upon past as well as future offenses, such as changes in the manner or kind of employment of convicts sentenced to hard labor, the system of supervision,. the means of restraint, or the like changes of this sort, may operate to increase or mitigate the severity of the punishment of the convict,. but will raise no question under the constitutional provision we are:

now considering." *Hartung* v. *People,* 22 N. Y. 95, 105; Cooley, Const. Lim. 270, 271; in re *Tyson,* 13 Colo. 482, 487, 22 Pac. 810, 6 L. R. A. 472.

The Medley case, cited by appellant, is not authority to support his contention that this change increases his punishment to his disadvantage. In that case, one section of the Colorado statute under review permitted the warden of the penitentiary to fix the day (and that within the week designated by the court's sentence) when death should be inflicted. The prisoner could not be advised of the day and hour of his death until called upon to face it. The prisoner's feeling of uncertainty as to the time when he would be called to the scaffold was an infliction not contemplated by the former law. But under the statute we are considering, accused is advised, by the sentence, as to the precise day when he will be executed, and there is no chance for such uncertainty. That the day of his death is postponed by operation of this statute cannot be considered as a prolongation of the suffering and therefore added punishment. It is believed that the common instinct of mankind, when sane, is in favor of life and its prolongation. Death is the extreme penalty that can be inflicted. Any change of the penalty short of that is considered a mitigation, and postponement of the time of its infliction is also a mitigation.

In *Com.* v. *Gardner,* 11 Gray 438, it is said: "The substitution of imprisonment for life in place of death is a mitigation in the eye of the law. It is everywhere so regarded. It is on that ground that the executive power of commutation is founded. The statute proceeds on the same ground." In *Com.* v. *Wyman,* 12 Cush. 239, it is said: "An act plainly mitigating the punishment of an offense is not *ex post facto.* On the contrary it is an act of clemency. A law which changes the punishment from death to imprisonment for life is a law mitigating the punishment, and therefore is not *ex post facto.*" Judge Cooley in his work on Constitutional Limitations, section 272, says: "The substitution of any other punishment for that of death must be regarded as a mitigation of the penalty." In the Tyson case, 13 Colo. 482, 488, 22 Pac. 810, 6 L. R. A. 472, this point was under consideration. The court said: "If, under this act, the convict might be hanged within less than the minimum of time from the date of passing sentence enjoined by the former statute, we would unhesitatingly say that the law could not be made applicable to this case, as to hold otherwise would be contrary to the rule prohibiting a change of punishment to the disadvantage of the de-

fendant after the commission of the crime." If the shortening of the life for a single day is to the disadvantage of the convict, the extension of life for nine days or three months must be considered to his advantage. In *Territory* v. *Miller,* 4 Dak. 173, 181, 29 N. W. Rep. 7, 11, the court said: "It will not be contended that a statute which in no wise increases the penalty, or the defendant's risk in respect thereof, but rather affords the possibility of its mitigation, is of the character suggested. This statute confers upon the court a power which it did not before possess—to mitigate the penalty for murder, upon a plea of guilty, to imprisonment for life." In *State* v. *Williams* (S. C.) 45 Am. Dec. 741, it is held that the commutation of the death penalty to fine, whipping, and imprisonment is in mitigation. In *McInturf* v. *State,* 20 Tex. App. 352, after the commission of the offense, and before trial, the statute was changed so that, instead of the infliction of the death penalty, either capital punishment or imprisonment for life could be imposed. The court said, when this act was challenged as *ex post facto*: "In no sense can we conceive how a mere remedy which ameliorates punishment, and inures solely to the benefit of the party to be punished, can be considered as coming within the prohibition of retroactive or *ex post facto* laws." Justice Valentine, in the Petty case, 22 Kan. 485, makes use of the following language: "In all ages, and in all countries, immediate or sudden death has been considered as the highest of all earthly punishments, and torture alone has been the only other element resorted to to heighten this punishment. At the time of the passage of the act under consideration, changing the punishment for murder in the first degree, and ever since such time, it has been believed that the act was one lessening the punishment for murder in the first degree, instead of an act increasing it. And is not this belief correct? Suppose a man, in the ordinary course of nature, is to live ten years; would it not be a greater punishment to him to take from him the whole of that ten years by executing him immediately, than to permit him to live one year or more, even in the penitentiary, and then to take only nine of those years from him? As long as men live, there are always hopes of a better future. Even convicts hope for pardon and liberty and a long life."

Counsel insist that it is not for the court to say that the nine days of additional life extended appellant before his execution is not an increase of punishment, or to declare it a mitigation of the penalty; that it is a change of the punishment, and substitution of a different

one from that affixed to his crime when it was committed, and there-- fore within the condemnation of the constitutional mandate. It is. urged that the court can have no means of saying whether a change· of prescribed punishment, made after the commission of an offense: and before sentence, is to the advantage or disadvantage of the convict, unless the substituted penalty falls within the idea of a re-- mission of a separate part of the punishment before prescribed; that the question whether imprisonment for life or death by hanging would be the severer penalty would depend upon the disposition or temperament of the convict, and is for neither the legislature nor the· court to decide; and counsel cites *Hartung* v. *People,* 22 N. Y. 95,. Cooley, Const. Lim. 272, and in re *Petty,* 22 Kan. 485, in. support: of his contention. Judge Denio's statement in the Hartung case,. which is relied upon by counsel, that "it is enough to bring the law within the condemnation of the constitution, that it. changes the punishment, after the commission of the offense, by substituting for the prescribed penalty a different one," and "we have no means of saying whether one or the other would be the most. severe in a given case. That would depend upon the disposition. and temperament of the convict. The legislature cannot thus experi-- ment upon the criminal law"—has, in its unmodified form, been condemned by the Court of Appeals of New York, and by· the· courts of many other states, as well as the reasons he assigns in its. support. *People* v. *Hayes,* 140 N. Y. 484, 35 N. E. Rep. 951, 23· L. R. A. 830, 37 Am. St. Rep. 572, and cases hereinafter cited. The· validity of chapter 99, Laws 1903, as applied to this defendant, must be determined by this court. The very purpose and sole point of this appeal is to secure such determination. The validity of the· statute and of appellant's sentence depend upon the consideration whether, as applied to him, the enactment increases the punishment which may be inflicted upon him, or changes it to his disadvantage. The extension of life for a few days may be a prolongation of mental suffering to the condemned individual, and therefore an aggravation of punishment to one of his temperament and disposition; but whether this change mitigates or increases his suffering, and wheth- er the change is to his advantage or disadvantage, cannot be left to him for determination. This, as other questions of like import, must be determined in the light of experience and precedent. Both experience and precedent declare, as we have already pointed out,.

that any postponement of death is a mercy. There is a presumption that the legislature, in affixing the emergency clause to the act under review, thereby making it apply to past as well as future offenses, had in mind this law of nature, and intended, by making the maximum time between sentence and execution, under the old law, the minimum under the new law, to relieve the act of any possibility of being declared *ex post facto*. Whatever difference of opinion may arise upon this subject, upon the courts must rest the responsibility of declaring whether a given change is or is not an increase of punishment, or to the disadvantage of the accused. Although the power of the court to determine was not challenged in any of them, the courts have frequently been called upon to decide, and they have decided, that changes in the statutes punishing crimes, as applied to past offenses, either increased or diminished the punishment, and were to the advantage or disadvantage of the prisoner, and, by so deciding, necessarily held such determinations to be judicial questions. In re *Medley,* 134 U. S. 160, 10 Sup. Ct. 384, 33 L. Ed. 835; *Holden* v. *State,* 137 U. S. 483, 11 Sup. Ct. 143, 34 L. Ed. 734; *Turner* v. *State,* 40 Ala. 26; *Com.* v. *Gardner,* 11 Gray 438; *Com.* v. *Wyman,* 12 Cush. 237; *State* v. *Kent,* 65 N. C. 312; *State* v. *Ratts,* 63 N. C. 503; *Strong* v. *State,* 1 Blackf. 193; *People* v. *Hayes,* 140 N. Y. 484, 35 N. E. Rep. 951, 23 L. R. A. 830, 37 Am. St. Rep. 572; *Territory* v. *Miller,* 4 Dak. 173, 29 N. W. Rep. 7; *People* v. *McNulty* (Cal.) 28 Pac. 816; *State* v. *Williams* (S. C.) 45 Am. Dec. 741; *McInturf* v. *State,* 20 Tex. App 335; in re *Tyson,* 13 Colo. 482, 22 Pac. 810, 6 L. R. A. 472; *Hair* v. *State,* 16 Neb. 601, 21 N. W. Rep. 464; *State* v. *Arlin,* 39 N. H. 179.

We have not overlooked the McNulty case (Cal.) 28 Pac. 816, in examining these questions. That court's opinion upon the points here involved was controlled by its interpretation, and, we think, in some respects, a misinterpretation and misapplication, of the opinion of the Supreme Court of the United States in the Medley case. The California court finally succeeded, after several hearings, in reaching a conclusion in accord with the sentiments of Justices Brewer and Bradley, "whereby a convicted murderer was not permitted to escape the death he deserved, and to be turned loose on society." *People* v. *McNulty,* 93 Cal. 427, 29 Pac. 61, 26 Pac. 598, 28 Pac. 816.

Our conclusion is that the statute is not vulnerable to the constitutional objections urged against it; that it was within the power

·of the legislature to make the provisions of this act applicable to offenses already committed; that the judgment appealed from is ·correct, and the same is affirmed.  All concur.