Tony GARRETT, Plaintiff-Appellee,

v.

W. J. ESTELLE, Jr., Director, Texas Department of Corrections, et al., Defendants-Appellants.

No. 77–1351.

United States Court of Appeals,
Fifth Circuit.

Aug. 3, 1977.

Rehearing and Rehearing En Banc Denied Sept. 21, 1977.

---

1. 15 U.S.C. §§ 13–13b, 21a (1970).

John L. Hill, Atty. Gen., Joe B. Dibrell, Jr., Asst. Atty. Gen., Chief, Enforcement Div., David M. Kendall, Jr., Asst. Atty. Gen., Austin, Tex., for defendants-appellants.

James D. Whisenand, Deputy Atty. Gen., State of Fla., Dept. of Legal Affairs, Tallahassee, Fla., amicus curiae, for 24 states and Puerto Rico.

Fred E. Time, Tom S. McCorkle, Jr., Peter A. Lesser, Dallas, Tex., for plaintiff-appellee.

Dan P. S. Paul, Miami, Fla., amicus curiae, for Reporter's Committee on Freedom, et al.

Before THORNBERRY, AINSWORTH and RONEY, Circuit Judges.

AINSWORTH, Circuit Judge:

The question for decision is whether a news cameraman can require the State of Texas to permit him to film executions in state prison for showing on television. Texas denied the right to film executions to Tony Garrett, a TV news cameraman, who then brought this action seeking an injunction to require access for that purpose. The State would allow full access to the event by newsmen, but deny recording of an execution by any mechanical means, such as photography, sound recording or motion

picture. The district court ordered Texas to permit Garrett to attend and film executions.

On appeal the State asserts that the first amendment does not impose on it an affirmative duty to make executions available for mechanical recording or photographing. Garrett contends that to prevent him from filming executions deprives him of rights as a newsman guaranteed under the first and fourteenth amendments. We hold that the protection which the first amendment provides to the news gathering process does not extend to matters not accessible to the public generally, such as filming of executions in Texas state prison, and therefore that Garrett has no such right. Accordingly we reverse the holding of the district court.

The record indicates that Texas has not executed a prisoner since 1964. In November 1976, Garrett, a news reporter for a Dallas, Texas television station, requested permission of the Texas Department of Corrections to film the first execution of a prisoner to take place under Texas' new capital punishment statute, and to film interviews with death row inmates. Permission was denied. Shortly thereafter Texas promulgated a "Media Policy: Execution Proceedings" which provided for one representative each from the Associated Press and United Press International to be present at time of execution in the execution chamber as press pool representatives; also facilities at which other press corps members could view a simultaneous closed circuit telecast of the execution; and access to death row inmates for interviews.[1] This policy was soon repudiated, however, because in the opinion of Texas Corrections Commissioner Estelle, Texas Code of Criminal Procedure articles 43.17 and 43.20 effectively prohibited press access to death row inmates and press attendance at executions.[2] Garrett's complaint sought judg-

---

1. The full text of the policy statement follows:
   *Media Policy: Execution Proceedings*
   One Texas bureau representative designated by the Associated Press and one Texas bureau representative designated by the United Press International will be admitted to the execution chamber as witnesses, provided those designated agree to act as pool reporters for the remainder of the media present and to meet with all media representatives present immediately subsequent to the execution. The remainder of the media shall be allowed to witness the execution via closed circuit television monitors.
   —Press interviews of condemned prisoners shall be scheduled by the Public Affairs Office and conducted at the Ellis Unit each Wednesday during the hours of 9:00–11:00 A.M.
   —No press interviews of the condemned shall be allowed at the Huntsville Unit.
   —Only properly credentialed press will be admitted to witness the execution.
   —No recording devices, either audio or video, small [sic] be permitted either in the execution chamber or monitor room.
   —All persons entering the monitor area shall submit to electronic surveillance. Any person detected attempting to introduce recording equipment into the monitor area shall be excluded automatically.
   —No video tapes shall be made from the monitor system.
   —TDC shall provide the press the following data:
   . . . Historical data concerning the death penalty

. . . Public record information concerning the condemned (Name, D.O.B., Race, County of Conviction, Date Received)
   . . . Photograph of condemned

2. Texas Code of Criminal Procedure article 43.17 provides:
   Upon the receipt of such condemned person by the Director of the Department of Corrections, he shall be confined therein until the time for his execution arrives, and while so confined, all persons outside of said prison shall be denied access to him, except his physician and lawyer, who shall be admitted to see him when necessary to his health or for the transaction of business, and the relatives, friends and spiritual advisors of the condemned person, who shall be admitted to see and converse with him at all proper times, under such reasonable rules and regulations as may be made by the Board of Directors of the Department of Corrections.
   Article 43.20 provides:
   The following persons may be present at the execution: the executioner, and such persons as may be necessary to assist him in conducting the execution; the Board of Directors of the Department of Corrections, two physicians, including the prison physician, the spiritual advisor of the condemned, the chaplains of the Department of Corrections, the county judge and sheriff of the county in which the Department of Corrections is situated, and any of the relatives or friends of the

ment declaring article 43.20 unconstitutional, and an injunction prohibiting Texas from preventing him from filming executions and interviews with death row inmates.

On January 5, 1977, the district judge in a preliminary injunction declared article 43.17 unconstitutional in light of the first and fourteenth amendments. The district judge ordered that press visits to death row and the AP–UPI press pool provisions be reinstituted according to the guidelines originally proposed by Texas. The district judge further ordered that Garrett be allowed to witness and film executions. Garrett would then televise all or portions of the film at a later time.

On February 11, 1977, Texas moved to dismiss Garrett's suit and to modify the district court's injunction by deleting the portion ordering the State to allow Garrett to witness and film executions. Accompanying the motions was Texas' statement of intent to adhere to the guidelines which the district judge had ordered reinstituted, and to seek amendment by the State Legislature of article 43.17 to permit interviews with death row inmates. Texas also renewed its proposal that closed circuit television facilities be provided for the press at large. The district judge denied both motions.

Texas appeals only that portion of the district judge's preliminary injunction requiring Texas to admit Garrett to the execution chamber to film executions. The State relies on recent Supreme Court decisions holding that the press has no greater right of access to prisons or prisoners than has the general public. It further contends that since the public has no right under the first amendment to film executions, a member of the press has no such right.

Garrett asserts a first amendment right to gather news, which he contends can be limited only on account of a compelling state interest. He further argues that preventing him from using a motion picture camera to gather news denies him use of

the tool of his trade and therefore denies him equal protection of the laws. Garrett also contends that the denial amounts to a prior restraint on publication. Amicus curiae further argues that the closed circuit telecast which Texas proposes to provide to the press is a publication, and preventing members of the press from recording the telecast constitutes an illegal restraint on republication.

■ News gathering is protected by the first amendment, for "without some protection for seeking out the news, freedom of the press could be eviscerated." *Branzburg v. Hayes*, 408 U.S. 665, 681, 92 S.Ct. 2646, 2656, 33 L.Ed.2d 626 (1972). This protection is not absolute, however. As the late Chief Justice Warren wrote for the Supreme Court, "The right to speak and publish does not carry with it the unrestrained right to gather information." *Zemel v. Rusk*, 381 U.S. 1, 17, 85 S.Ct. 1271, 1281, 14 L.Ed.2d 179 (1965). In *Branzburg* the Court said, "It has generally been held that the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." *Branzburg v. Hayes, supra*, 408 U.S. at 684, 92 S.Ct. at 2658. Relying on *Branzburg* and *Zemel* the Court has recently held, "The First and Fourteenth Amendments bar government from interfering in any way with a free press. The Constitution does not, however, require government to accord the press special access to information not shared by members of the public generally." *Pell v. Procunier*, 417 U.S. 817, 834, 94 S.Ct. 2800, 2810, 41 L.Ed.2d 495 (1974); *accord, Saxbe v. Washington Post Co.*, 417 U.S. 843, 850, 94 S.Ct. 2811, 2815, 41 L.Ed.2d 514 (1974).

At issue in *Pell* and *Saxbe* were state and federal prison regulations prohibiting prearranged press interviews with individually selected prisoners, though press access to the prison and to prisoners encountered therein was permitted. Members of the press brought an action to protect "their

---

condemned persons that he may request, not exceeding five in number, shall be admitted.

No convict shall be permitted by the prison authorities to witness the execution.

right to gather news without governmental interference, which the media plaintiffs assert includes a right of access to the sources of what is regarded as newsworthy information." *Pell v. Procunier, supra,* 417 U.S. at 829–30, 94 S.Ct. at 2807–08. The press plaintiffs placed great value on prearranged personal interviews; they impressed upon the Court that

> face-to-face interviews with specifically designated inmates is such an effective and superior method of newsgathering that its curtailment amounts to unconstitutional state interference with a free press.

*Pell v. Procunier, supra,* 417 U.S. at 833, 94 S.Ct. at 2809–10.

In each case the Supreme Court noted that the contested regulation was not part of an attempt by government to conceal prison conditions or to frustrate press investigations of those conditions. The Court further noted that the only restriction on news gathering at the prisons was the limited regulation against prearranged personal interviews; that the press was accorded in fact greater access to the prisons and inmates than the public generally. After taking into account the great importance placed on such interviews by the press, the Court held that first amendment protection of news gathering did not invalidate the prison regulations:

> Accordingly, since [the regulation] does not deny the press access to sources of information available to members of the general public, we hold that it does not abridge the protections that the First and Fourteenth Amendments guarantee.

*Pell v. Procunier, supra,* 417 U.S. at 835, 94 S.Ct. at 2810; *accord, Saxbe v. Washington Post Co., supra,* 417 U.S. at 850, 94 S.Ct. at 2815.

■ In the present case Garrett and amicus attempt to distinguish *Saxbe* and *Pell.* Garrett points out that in those cases the press was allowed "substantial access" to the prison and inmates, so that "the only restriction upheld by *Pell* and *Saxbe* was the rule against press singling out specific inmates for interviews." Garrett would

have us read those cases for that proposition alone. We cannot agree that those cases must be read so narrowly. The Court made no *ad hoc* determination in *Saxbe* and *Pell*; it proceeded from the general principle, quoted above, that the press has no greater right of access to information than does the public at large; and that the first amendment does not require government to make available to the press information not available to the public. This principle marks a limit to the first amendment protection of the press' right to gather news. Applying this principle to the present case, we hold that the first amendment does not invalidate nondiscriminatory prison access regulations.

Garrett and amicus argue that the present case is not an access case, but a case involving a limitation on the content of what may be reported once access has been granted. *Saxbe* and *Pell* speak only to access questions, they maintain. This argument cannot be sustained by *Saxbe* and *Pell.* In those cases access was provided except for one purpose, that is, the conducting of prearranged personal interviews. In the present case, similarly, access is provided except for one purpose, to film executions. In order to sustain Garrett's argument we would have to find that the moving picture of the actual execution possessed some quality giving it "content" beyond, for example, that possessed by a simulation of the execution. We discern no such quality from the record or from our inferences therein. Despite the unavailability of film of the actual execution the public can be fully informed; the free flow of ideas and information need not be inhibited.

■ Amicus refers us to the district judge's memorandum opinion in which *Pell* and *Saxbe* are distinguished on several additional grounds. The district court said that while *Pell* and *Saxbe* involved reporting merely the day-to-day operation of prisons, the present case involves reporting "one of the most important and controversial public issues of the day" which "should be accompanied in a democratic society by the widest possible public knowledge and

information." While we agree that the death penalty is a matter of wide public interest, we disagree that the protections of the first amendment depend upon the notoriety of an issue. The Supreme Court has held that the first amendment does not protect means of gathering news in prisons not available to the public generally, and this holding is not predicated upon the importance or degree of interest in the matter reported.

The district court next distinguished *Pell* and *Saxbe* on the ground that in those cases substantial press access to the prisons was available, while in the present case it is not. That was true when this suit was brought, but in the position in which we review it access has now been provided. As noted, pool reporters may witness an execution in the chamber and other press members may witness it via closed circuit telecast. This is the broadest kind of access, extending, as in *Pell* and *Saxbe*, well beyond that afforded the public generally. As in those cases, there is no effort by prison authorities here to conceal conditions at the prison or inhibit press investigations of those conditions. Thus the asserted ground of distinction is not valid.

Finally, the district judge noted that in *Pell* and *Saxbe* prison security and the deterrent value of imprisonment were said to be diminished when certain prisoners, singled out repeatedly for personal interviews, achieved enhanced standing among their peers. No such threats are posed by filming of executions, the district judge reasoned. This ground of distinction is echoed by Garrett and amicus, who argue that before Garrett may be restrained from exercise of his asserted first amendment right to film executions, a "compelling state interest" must be found to balance the infringement of Garrett's right.

Balancing a public interest against an individual's constitutional right has been used when the two are found to be inconsistent. *Pell* and *Saxbe* make clear, however, that the right to gather news, protected by the first amendment, does not impose upon government "the affirmative duty to

make available to journalists sources of information not available to members of the public generally. That proposition finds no support in the words of the Constitution or in any decision of this Court." *Pell v. Procunier, supra,* 417 U.S. at 834–35, 94 S.Ct. at 2810. Thus the first amendment does not accompany the press where the public may not go.

■ We find, then, that according to the principle enunciated by the Supreme Court in *Pell* and *Saxbe,* "the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." Therefore, Garrett cannot find his right to film Texas executions in the first amendment.

■ Garrett next argues that to prevent his filming executions denies him equal protection of the law, since other members of the press are allowed free use of their usual reporting tools. This argument is also without merit. The Texas media regulation denies Garrett use of his camera, and it also denies the print reporter use of his camera, and the radio reporter use of his tape recorder. Garrett is free to make his report by means of anchor desk or stand-up delivery on the TV screen, or even by simulation. There is no denial of equal protection.

■ Finally, amicus suggests that the proposed simultaneous closed circuit telecast is a "publication" and that to prohibit its use in any way, such as by filming, is an illegal prior restraint on republication. This suggestion is similar to the argument made by Garrett that once he is given access to information by the government, here by closed circuit telecast, the government may not limit the use Garrett may make of the information, such as filming it. But the access granted to Garrett and the other members of the press is limited. Access for the purpose of filming is not provided, and the first amendment does not require that it be provided.

Televising an execution would amount to conducting a public execution, the State of Texas contends. The Attorney General informed the Court at oral argument that Texas discontinued public executions in

1920. Long prior thereto, in 1890, the Supreme Court upheld the right of a state to restrict attendance at executions. The Court said, "These are regulations which the legislature, in its wisdom, and for the public good, could legally prescribe . . . ." *See Holden v. State of Minnesota,* 137 U.S. 483, 491, 11 S.Ct. 143, 146, 34 L.Ed. 734 (1890) (Harlan, J.). We will not in this case frustrate the official policy of the State of Texas by requiring access to a news cameraman for filming for television executions in state prison, under the guise of protecting first amendment rights. It is clear to us that no such constitutional right is guaranteed to a TV cameraman.

We have determined that the Supreme Court rule of *Pell and Saxbe* is applicable to the circumstances of the present case, so that the district court erred in finding that the first amendment requires Texas to allow Garrett to film Texas executions. We have also decided that Texas' rule barring the use of motion picture cameras to gather news at executions does not deny Garrett equal protection of the law. Accordingly we reverse the judgment of the district court requiring the State of Texas to permit Garrett to film executions, and we dissolve that portion of the district court's preliminary injunction ordering such permission.

REVERSED.