25 F.3d 1040
 22 Media L. Rep. 1839
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
David LAWSON; Phillip J. Donahue; James Arnold, Plaintiffs
Appellants,
v.
Gary DIXON, as an individual and in his capacity as Warden,
Central Prison, a Division of the North Carolina Department
of Correction; Franklin Freeman, as an individual and in
his capacity as Secretary of the Department of Corrections,
Defendants Appellees.
 No. 94-6640.
 United States Court of Appeals, Fourth Circuit.
 Submitted: June 8, 1994.
Decided: June 13, 1994.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. W. Earl Britt, District Judge. (CA-94-389-5-BR1)
 John H. Hasty, G. Bryan Adams, III, Waggoner, Hamrick, Hasty, Monteith & Kratt, Charlotte, North Carolina, for Appellants.
 Michael F. Easley, Attorney General of North Carolina, Andrew A. Vanore, Jr., Chief Deputy Attorney General, Jacob L. Safron, Special Deputy Attorney General, Sylvia Thibaut, Assistant Attorney General, Raleigh, North Carolina, for Appellees.
 Before ERVIN, Chief Judge, and WIDENER and NIEMEYER, Circuit Judges.
 ERVIN, Chief Judge.
 
 
 1
 David Lawson (Lawson) is scheduled to be executed by the State of North Carolina using lethal gas at 2 a.m. on the morning of Wednesday, June 15, 1994. On April 13, 1994, two days after he received notice of his scheduled execution date, Lawson wrote to the warden of Central Prison, Gary Dixon, and designated the individuals he desired to be present at the time of his execution. Among the individuals named were Phillip Donahue (Donahue) and James Arnold (Arnold). Donahue is a widely-known television journalist and talk-show host; Arnold is a cameraman who has won two Emmy awards for his work. In the same letter, Lawson requested that Donahue and Arnold be allowed to videotape his execution for inclusion in a documentary that was being prepared on his life. According to Lawson, he desired that his life
 
 
 2
 serve as an example to others of the effects of child abuse, anxiety disorder, depression and the pitfalls of a life of crime; and that it be used as an educational medium to aid in the prevention of and hopefully as a deterrent to others who might fall into the same lifestyles and patterns of conduct which I followed.
 
 He also stated:
 
 3
 I also feel and am equally committed to do all within my power to inform the public of the true significance of the death penalty and thereby to make a meaningful contribution to the significant public debate over the use of the death penalty.
 
 
 4
 In a separate letter the same day, Donahue wrote to Dixon requesting that he be allowed to make an audio-visual recording of the execution. He assured Dixon that "we intend to do this program tastefully, in a responsible way, without sensationalism and with no discredit to your institution."
 
 
 5
 On April 26, 1994, Dixon responded to Donahue and Lawson, indicating that he would not allow them to video record Lawson's execution because of "interests of the orderly operation and security of this institution."[1]
 
 
 6
 Subsequently, Lawson, Donahue and Arnold initiated state court proceedings against Dixon and Freeman, the Secretary of the Department of Correction, the defendants-appellees in this case, alleging violations of their rights under the First and Fourteenth Amendments to the United States Constitution and under Article 1, Section 14 of the North Carolina Constitution. As outlined below, after a remarkable series of proceedings, the result of the state litigation was a May 17, 1994 decision by the Supreme Court of North Carolina on the merits, finding that Lawson, Donahue and Arnold do not have a right under either the United States or North Carolina Constitutions to videotape Lawson's execution. Lawson v. Dixon, No. 198P94-2 (May 17, 1994). A subsequent petition for rehearing, filed May 27, was denied on May 31.
 
 
 7
 On June 1, Lawson, Donahue and Arnold[2] initiated this Complaint for Declaratory and Injunctive Relief in the United States District Court for the Eastern District of North Carolina, Raleigh Division. It named the same two defendants as the state litigation, Dixon and Freeman; and it alleged the same federal violations of the freedoms of speech and expression protected by the First and Fourteenth Amendments to the United States Constitution. At the same time, plaintiffs also moved for a preliminary injunction. Two days later, Dixon moved to dismiss for lack of subject matter or personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1),(2) and failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6); in addition, he argued that the claim was barred by reason of res judicata. The district court held hearings on the outstanding motions on June 7, 1994, at which time it issued a bench ruling dismissing the case. As the first ground for dismissal, the court cited District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983), and its progeny. In the alternative, the court granted summary judgment for the state defendants by holding that the plaintiffs do not have a right to audiotape or videotape an execution. Lawson immediately noted his appeal in district court and filed with this court a motion to stay the judgment and requesting an injunction allowing the videotaping of Lawson's execution. For the reasons stated below, we affirm the judgment of the district court.
 
 I.
 
 8
 The district court relied as its principal holding upon what can be called the Feldman doctrine. That doctrine, which certainly does not originate with that case, involves the question of the power of federal courts to interfere with adjudicatory proceedings in state courts. "Federal courts, with the exception of the United States Supreme Court, do not possess appellate jurisdiction over state court proceedings." Keene Corp. v. Cass, 908 F.2d 293, 296 (8th Cir.1990); accord Feldman, 460 U.S. at 476; Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 296 (1970). Although Dixon presses upon us a line of cases in support of his argument that we are presented with just such a scenario here, the differences between those cases and the instant scenario convince us that they are not analogous. In the "normal" application of this doctrine, a party that has lost in some way in a state court proceeding seeks refuge in the federal courts by alleging, usually through an action under 42 U.S.C. Sec. 1983, that the state court's actions and/or judgment violated the federal plaintiff's constitutional rights. Also, the relief requested usually is an injunction preventing the implementation of the state court's order, and the defendants usually include the judge by whom the federal plaintiff has been aggrieved. Thus, these elements constitute typical evidence of a classic collateral attack on an otherwise valid state action.
 
 
 9
 This case, while it has difficulties of its own, does not possess difficulties of that sort. The defendants are not judicial officials; the relief requested does not include a stay of an order of the North Carolina Supreme Court; and the complaint in no way references the prior litigation. The Feldman doctrine is not implicated because we are not requested to sit in appellate review of the actions of our sister state court. The district court erred in finding that it lacked jurisdiction under Feldman.
 
 II.
 
 10
 Before we reach the merits, however, we must address a second affirmative defense that the defendants raise, namely, the preclusive effect of the prior state litigation. For the reasons stated below, we believe that Lawson is precluded from raising this claim in federal court, having already litigated this issue in state court to a final judgment on the merits.
 
 
 11
 Title 28, Section 1738 of the United States Code states that
 
 
 12
 Acts, records and judicial proceedings ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.
 
 
 13
 As we recently explained,
 
 
 14
 federal courts asked in a Sec. 1983 action to give res judicata effect (in any of the doctrine's aspects) to a state court judgment are bound under the Full Faith and Credit statute, 28 U.S.C. Sec. 1738, to apply the law of the rendering state to determine whether and to what extent the state court judgment should have preclusive effect in the federal action. The question here, then, is whether, if the instant Sec. 1983 action were pending in a North Carolina state court, the North Carolina courts would give the earlier state court judgment ... claim-preclusive effect.
 
 
 15
 Davenport v. North Carolina Dep't of Transp., 3 F.3d 89, 92-93 (4th Cir.1993) (citations and footnote omitted). We must therefore look to North Carolina law to determine the elements of claim preclusion.[3]
 
 
 16
 Under North Carolina law, for claim preclusion to apply, "a party must show that a previous suit has resulted in a final judgment on the merits, that the same cause of action is involved, and that [the current plaintiffs and defendants] were either parties or stand in privity with parties" in the previous suit. Swanson v. State, 441 S.E.2d 537, 548 (N.C.1994). Here, each of these elements has been met. The North Carolina Supreme Court dismissed Lawson's action on the merits in its May 17 order;[4] the First and Fourteenth Amendment claim is identical, as is the relief requested; and the plaintiffs and defendants are identical. Thus, every indication is that this claim is barred from being relitigated, having been litigated once to conclusion.
 
 
 17
 Nevertheless, there is an aspect of the case that we must confess gives us pause. For while it is not a stated element of the North Carolina test to give claim-preclusive effect to a prior judgment, under the holding in Kremer v. Chemical Construction Corp., 456 U.S. 461, 480-81 (1982), only state proceedings that satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause will be given full faith and credit by a federal court. Accord Lee v. Winston, 717 F.2d 888 (4th Cir.1983); Jones v. City of Alton, 757 F.2d 878 (7th Cir.1985). Thus, since the plaintiffs have challenged the process to which they were subjected in the state proceeding that the defendants now attempt to use to bar this proceeding, we find it necessary to briefly address this question. Although we ultimately hold that sufficient procedural process was made available to the plaintiffs in that case, the extraordinary nature of the course of that case makes this a very difficult question.
 
 
 18
 On May 2, 1994, Lawson filed a Petition for Writ of Mandamus and Prohibitive Injunctive Relief in Wake County Superior Court. The Superior Court issued an Order to Show Cause to Dixon. In response, Dixon filed a Motion to Bypass the North Carolina Court of Appeals, a Petition for Writ of Supersedeas, a Motion for Temporary Stay and a Petition for Writ of Certiorari with the North Carolina Supreme Court. On May 5, the Supreme Court stayed all orders entered by the trial court. Subsequently, on May 9, Lawson dismissed the case and refiled it as a Complaint in the same court the same day. Once again, the Superior Court, on May 9, ordered Dixon to show cause why the videotaping should not be allowed, and on May 10 it set the depositions of Dixon and Freeman. Dixon and Freeman then turned again to the North Carolina Supreme Court, filing a Petition for Writ of Certiorari and a Motion to Bypass the Court of Appeals, as well as a Petition for Writ of Supersedeas and Motion for a Temporary Stay the same day. On that day, the North Carolina Supreme Court stayed all orders of the Superior Court, pending a response from Lawson. Lawson's response was filed with the Supreme Court on May 11. It explained at length why he thought that Dixon's motions were improper. Although Dixon's brief expended considerable energy arguing the merits of the constitutional issue at the center of the case, Lawson did not address the constitutional issue on the merits except in a limited fashion that cited no cases and was less than a full page in length. The defendants replied on May 12, and the plaintiffs responded to the reply the same day.
 
 
 19
 On May 17, the North Carolina Supreme Court issued an order in the case. It suspended the requirements of the rules of appellate procedure and, in the exercise of its supervisory powers pursuant to the North Carolina Constitution, it granted the motion to bypass the court of appeals and issued the writ for certiorari. It then reached the merits of the case and decided them against Lawson, as quoted in footnote 4, supra. Subsequently, on May 27, Lawson filed a petition for rehearing in the North Carolina Supreme Court. That petition had two aspects. First, it asserted that the court's handling and disposal of the case, through which it essentially took original jurisdiction of the case and disposed of it without briefs on the merits, was erroneous and violated Lawson's due process rights. Second, it argued in the petition and in an accompanying Brief of Authorities that the decision on the merits was wrongly decided. On May 31, the court denied the petition for rehearing without comment.
 
 
 20
 The core of the procedural due process rights under the Fourteenth Amendment guarantee a party notice and an opportunity to be heard. Here, the North Carolina Supreme Court reached the case on the merits from a petition for writ of certiorari, without Lawson having had the opportunity to brief the matter on its merits prior to its decision. Given the rapidity with which the entire adjudication took place, and the apparent lack of notice to Lawson that the court would determine the case on the merits without first granting the writ of certiorari (and of course Lawson never having set out the merits of his legal argument at any point in the proceedings), we are highly disquieted by the occurrences that resulted in the May 17 order. However, we must acknowledge that the plaintiffs did, eventually, brief the issue of the constitutionality of the videotaping matter on the merits and that this opportunity to ask for rehearing, under these particular circumstances in this sui generis case, appear to have given the state court a reasonable opportunity to rectify its error in denying notice, and thus satisfied the bare minimum requirements of procedural due process under the Fourteenth Amendment. 18 Wright et al., Federal Practice and Procedure Sec. 4415, at 129 (1981).
 
 
 21
 We emphasize that, under Kremer, we can examine only those aspects of the previous case that implicate procedural due process in determining whether to give preclusive effect to the prior state adjudication. Thus, other errors that may be disclosed in our review of the state court case must be passed over, for if we were to begin to investigate these, we would bring ourselves back into Feldman territory for certain. This rule is implicit in the Kremer opinion, and it is certainly the law that we must apply in our incarnation as a state court under 28 U.S.C. Sec. 1738. See King v. Grindstaff, 200 S.E.2d 799, 808 (N.C.1973) ("To be valid a judgment need not be free from error. Normally no matter how erroneous a final valid judgment may be on either the facts or the law, it has binding res judicata and collateral estoppel effect in all courts, Federal and State, on the parties and their privies.").[5]
 
 
 22
 Thus, given that we hold that, under the particular and peculiar circumstances of this case in the state courts of North Carolina, procedural due process requirements were met, we must also by necessity hold that we are precluded from hearing this decision because of the prior adjudication of the same claim between the same parties in the state courts of North Carolina. For this reason, the judgment below is affirmed.
 
 
 23
 The mandate shall issue forthwith.
 
 AFFIRMED
 WIDENER, Circuit Judge, concurring:
 
 24
 I concur with most of the panel opinion in this case and with the judgment. I write separately, however, to note that I do not join in any suggestion that the North Carolina Supreme Court's handling of Lawson's[1] appeal may have been improper. I also do not join in footnote five of the opinion.
 
 
 25
 The sequence of filings before the state courts is stated in the majority opinion. Yet, despite Lawson's filing on May 11th of a response to Dixon's motions of May 10th, and then a response on May 12th to Dixon's reply of May 12, the opinion may suggest that the fault for Lawson not responding to Dixon's arguments on the merits lies with the Court and not with the attorneys. I think Lawson had all of the process he was due, and I am not troubled by the procedures used. I need not rely on the petition for rehearing as a basis for concluding that Lawson eventually did have a chance to address the merits of his claim, although that fact adds support to the result we obtain. Lawson had a chance in his responses, and the petition for rehearing provided him with another chance.
 
 
 26
 Beyond that, I write separately to indicate that I do not join in the substance of footnote five. In 1890, the Supreme Court decided:
 
 
 27
 Whether a convict, sentenced to death, shall be executed before or after sunrise, or within or outside the walls of a jail, or within or outside of some other inclosure, and whether the inclosure within which he is executed shall be higher than the gallows, thus excluding the view of persons outside, are regulations that do not affect his sustantial [sic] rights. The same observation may be made touching the restriction in section five [of the statute at issue] as to the number and character of those who may witness the execution, and the exclusion altogether of reporters or representatives of newspapers. These are regulations which the Legislature, in its wisdom, and for the public good, could legally prescribe in respect to executions....
 
 
 28
 Holden v. Minnesota, 137 U.S. 483, 491 (1890). Holden has not been overruled. Applying the principle that the greater power includes the lesser, it is obvious that if the condemned has no substantial rights under the United States Constitution as to who may be allowed to witness his execution, he certainly has no substantial rights in whether one of his invited witnesses may bring a video camera to the execution and film it. The lateness of the hour does not permit me to voice additional concerns I would have if required to accept the argument that Lawson's free speech rights are violated by the inability of someone else to videotape his execution. However, Holden is sufficient authority for me to note my disagreement with any implication that the North Carolina Supreme Court incorrectly decided the merits.
 
 
 29
 In addition, I note my disagreement with the majority that Holden and Garrett v. Estelle, 556 F.2d 1274 (5th Cir.1977), cert. denied, 438 U.S. 914 (1978), do not control at least part of this case.[2] Garrett is on all fours, factually and legally, with the claim of Donahue and Arnold to a right to make a television tape of the execution. As I read the papers before us and the transcript of the hearing before the district court, Lawson's claim is also predicated at least in part on claimed First Amendment rights of Donahue and Arnold as members of the press.[3] The holding in Garrett is conclusive on that point. See also Philadelphia Newspapers, Inc. v. Jerome, 387 A.2d 425, 438 (Pa.1978) (construing Garrett and Holden ), appeal dismissed for want of federal question, 443 U.S. 913 (1979); cf. Halquist v. Department of Corrections, 783 P.2d 1065 (Wash.1989) (per curiam) (finding ban on videotaping executions a proper limit on media right to access under the Constitution of the State of Washington).
 
 
 30
 I would find no difficult questions implicating due process in the actions of the North Carolina Supreme Court. I would also find that neither Lawson nor Donahue nor Arnold had had violated a First Amendment right of any of them to videotape Lawson's execution.
 
 NIEMEYER, Circuit Judge, concurring:
 
 31
 I concur in the court's opinion and write separately only to note that because of the unusual procedure followed by the North Carolina courts, though perhaps justified by the exigency of time, I would address the merits and conclude that Lawson does not have a First Amendment right to have his death videotaped. Moreover, the demand by Donahue and Arnold to have access to videotape Lawson's death does not, in this case, implicate the First Amendment right to free speech or free press. See Houchins v. KQED, Inc., 438 U.S. 1 (1978). While the right of access to places, events, and information is not guaranteed by the First Amendment, I hasten to note that the right to communicate or publish information actually obtained falls within the amendment's core. Because I believe that North Carolina has the legal right to regulate access to its prisons and to events involving the execution of duly imposed sentences, I rely also on these reasons to affirm.
 
 
 
 [1]
 It is our understanding that North Carolina, in an apparently unusual departure from past practice, has since indicated that it will not allow Lawson to designate Donahue as one of his witnesses to the execution. Because we do not reach the merits of the matter before us on appeal, we need not address the complications to the First Amendment argument this exclusion raises. In addition, there is no claim within the current appeal that Lawson has a constitutional right to select whomever he wishes to attend as his designee; the materials submitted by Lawson et al. indicate that they have proceeded on the assumption that the State would honor Lawson's request regarding the identity of each designated witness present on his behalf. We thus have no occasion to address this matter today
 
 
 [2]
 We hereafter refer to these three parties simply as "Lawson." Similarly, Dixon and Freeman will be referred to as "Dixon."
 
 
 [3]
 Claim preclusion is the more recent nomenclature for what often is referred to as res judicata. Because that term is sometimes confusingly used to include both issue and claim preclusion, we choose here to use the more precise term for the sake of clarity
 
 
 [4]
 The Supreme Court of North Carolina stated:
 And the Court, having reviewed the request in plaintiff's complaint and the orders, concludes that only a question of law is raised by plaintiffs' complaint; that plaintiffs David Lawson, Phillip J. Donahue, and James Arnold do not have a right under either the First or Fourteenth Amendments to the United States Constitution or under Article 1, Section 14 of the North Carolina Constitution to audiotape or videotape plaintiff Lawson's scheduled execution, see Houchins v. KQED, Inc., 438 U.S. 1 (1978); Pell v. Procunier, 417 U.S. 817 (1974); Garrett v. Estelle, 556 F.2d 1274 (5th Cir.1977); that under N.C.G.S. Sec. 15-190 the execution is under the supervision and control of Warden Dixon; and that, as a matter of law, neither Secretary Freeman nor Warden Dixon can be mandamused to permit the requested audiotaping or videotaping.
 Lawson v. Dixon, No. 198P94-2 (May 17, 1994), at 2.
 
 
 [5]
 For example, we note that the North Carolina Supreme Court based its holding on a series of cases dealing more directly with the rights of journalists to have access to prison facilities and executions, which has been the principal theoretical framework under which this claim has been considered in the case law and the literature. See Estelle v. Garrett, 556 F.2d 1274 (5th Cir.1977); Richards & Easter, Televising Executions: The High-Tech Alternative to Public Hangings, 40 U.C.L.A. L.Rev. 381 (1992); Drobny, Death TV: Media Access to Executions under the First Amendment, 70 Wash. U.L.Q. 1179 (1992); Turner & Brinkman, Televising Executions: The First Amendment Issues, 32 Santa Clara L.Rev. 1135. The claim in both the state court and federal court proceeding, by contrast, was leveraged off a claim of Lawson's First Amendment right of freedom of expression, and challenged the restriction of methods of communication of his message by prohibiting cameras to videotape his execution. Whatever the final result, which of course we cannot and do not reach, the usual rule is that a state must proffer some reason justifying its restriction so that a court can balance the individual's right against the state's need. In the state case, no evidence was ever introduced by Dixon offering a reason for its prohibition, raising questions regarding the soundness of the North Carolina Supreme Court's final judgment. However, while Lawson's papers filed below and on appeal attempt to persuade us that we should not accord the judgment preclusive effect for this reason, under the rules by which we are bound in either our federal capacity or our incarnation as a state court, we cannot reach these issues, which are better presented to the Supreme Court in appeal from the state court judgment
 
 
 [1]
 My reference to Lawson's appeal should be understood to include the appeals of Donahue and Arnold
 
 
 [2]
 Garrett relied on Holden
 
 
 [3]
 I would add that there has been no exclusion of the press from this execution. See North Carolina General Statutes 15-190, and Department of Correction Policy Statement, Revised January, 1994. The Policy Statement provides in applicable part, for the press to witness executions as follows:
 [F]ive media witnesses and five media alternates are selected by the North Carolina Press Association, the Radio Television News Directors' Association of the Carolinas (RTNDAC) and the Associated Press. The Press Association and RTNDAC each select two witnesses and two alternates. The Associated Press selects one witness and one alternate. The five witnesses will enter the witness chamber and witness the execution. Media alternates will serve when a media witness is not available to enter the prison at 1:00 AM in preparation for the execution at 2:00 AM.
 Also, along the same line, at the argument in the district court it was understood by everyone that Donahue would be permitted to witness the execution but not permitted to bring a television camera. Remarkably, in no paper filed with us has Lawson or Donahue complained of any revocation of that invitation, although the current petition to the Supreme Court states the same was revoked on June 8th. As the panel opinion indicates, however, that is not a question before us.